STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MICHAEL REYNOLDS AND MARTIN REYNOLDS, DEFENDANTS-APPELLANTS.

Argued December 1, 1964—Decided January 28, 1965.

*Mr. Peter Murray,* Assistant Prosecutor of Essex County, argued the cause for plaintiff-respondent (*Mr. Brendan T. Byrne,* Essex County Prosecutor, of counsel).

*Mr. Philip J. Mylod* argued the cause for defendant-appellant Martin Reynolds.

*Mr. Richard M. Glassner* argued the cause for defendant-appellant Michael Reynolds (*Mr. Salvatore A. Brancato,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This is an appeal by the defendants Martin Reynolds and Michael Reynolds from the trial court's denial of their applications for post-conviction relief and the denial of their motions to stay execution. We granted a stay of execution pending this appeal.

The defendants were convicted in Essex County in November 1962 for the robbery-murder of Fred Garcia. The jury did not recommend life imprisonment and the court sentenced the defendants to death. Their convictions were affirmed by this court on November 18, 1963. *State v. Reynolds,* 41 *N. J.* 163 (1963), *cert.* denied 377 *U. S.* 1000, 84 *S. Ct.* 1930, 12

*L. Ed. 2d* 1050 (1964), rehearing denied 379 *U. S.* 873, 85 *S. Ct.* 22, 23, 13 *L. Ed. 2d* 80, 81 (1964).

On November 13, 1964 the defendants applied to the judge who had presided at their trial for a hearing on their applications for post-conviction relief and a stay of execution. The judge, after considering the grounds set forth in defendants' petitions, found no merit in them and therefore no basis for staying execution. This was, in effect, a conclusion that the petitions on their face showed no basis for relief as a matter of law and so no hearing for the taking of testimony or any other purpose was required. On their appeal to this court, defendants' attorneys have submitted affidavits in support of their petitions. For the purpose of this appeal, we will consider the affidavits as if they were offered for the trial court's consideration.

The defendants contend that at the time of their confessions, they were not advised of their right to counsel or of their right to remain silent. They contend that their confessions, their re-enactment of the crime, and their identification of the gun used in the killing, all resulted from the failure of the police to advise them of their constitutional rights. The defendants do not assert that their confessions were involuntary, nor do they claim they requested counsel or that counsel had been engaged in their behalf. At the trial voluntariness was conceded and the confessions were admitted in evidence without objection. On this appeal, however, the defendants urge that *Escobedo v. Illinois,* 378 *U. S.* 478, 84 *S. Ct.* 1758, 12 *L. Ed. 2d* 977 (1964) announces a new rule of constitutional law which does not depend on voluntariness.[1] An identical position was recently taken by Sylvester Johnson and Stanley Cassidy in their appeal from a denial of post-conviction relief. We there held for the reasons set forth at length in our opinion that assuming *Escobedo* holds what the

---

[1] The United States Supreme Court denied defendants' petitions for *certiorari* on the same day it decided *Escobedo.* On the basis of that opinion they applied for a rehearing. As indicated above, the applications were denied.

defendants asserted, that rule should not be applied retroactively to invalidate convictions no longer subject to direct appeal. *State v. Johnson,* 43 *N. J.* 572 (1965). The trial of the present case was similar to that in *Johnson* in that the defendants in both cases made no issue of their guilt, but offered evidence in an attempt to persuade the jury to recommend life imprisonment. While the defendants' identification of the gun to the police came after counsel had been assigned to them, their admissions preceded their indictment. Therefore, even under the most favorable view of the meaning and scope of *Massiah v. United States,* 377 *U. S.* 201, 84 *S. Ct.* 1199, 12 *L. Ed. 2d* 246 (1964), it is inapplicable, as is *People v. Waterman,* 9 *N. Y. 2d* 561, 216 *N. Y. S. 2d* 70, 175 *N. E. 2d* 445 (*Ct. App.* 1961), relied upon by the defendants. In any event, since the admission in evidence of their statements identifying the gun had little importance in the over-all picture and does not taint the reliability of the jury's determination of their guilt, retroactive application of a rule prohibiting such evidence would be unwarranted.

The defendants next contend that they were denied a fair trial because of the trial court's failure to sequester the jury after it had been selected and because the unsequestered jury could have been exposed to newspaper articles relating to the time when a man recently convicted of murder in another county could become eligible for parole. They contend that if members of the jury read the articles, it is possible that they considered the matter of parole in determining whether to recommend life imprisonment. They request permission to examine the jurors to determine whether any of them read the articles and whether the articles were a factor in their not recommending life imprisonment.

The final juror was selected for the trial of the defendants on a Friday. The trial judge, without asking the consent of the defense counsel and the prosecutor, allowed the jury to return to their homes over the weekend. The jury returned the following Monday, the trial began, and the jury was thereafter sequestered. Over the weekend both Newark newspapers

printed an article about a young man who had pleaded *non vult* to an indictment charging him with the murder of two girls in Morris County. Each article mentioned the time when he could become eligible for parole.

While the failure of the trial judge to obtain the consent of the parties to his decision allowing the jurors to return to their homes over the weekend was a technical violation of *R. R.* 3:7-2(f), defense counsel made no objection at the trial nor did they raise the point as a ground for reversal on their direct appeal. They are entitled to relief in this proceeding only if a denial of relief would be contrary to fundamental justice. *R. R.* 3:10A-4. The technical error of the trial judge asserted here is certainly not, in itself, a denial of fundamental justice. The defendants, therefore, are entitled to relief only if the error resulted in prejudice which denied them their fundamental right to a fair trial. See *State v. (Edgar) Smith*, 43 *N. J.* 67, 74 (1964). The articles did not pertain to the particular crime and the defendants before the court. See *State v. Reynolds, supra*, 41 *N. J.*, at *pp.* 182-184. Furthermore, they were not in any way inflammatory. And, as this court said in *State v. White*, 27 *N. J.* 158, 178 (1958), "Doubtless most jurors have read of the parole of men sentenced for life." It is highly improbable that the articles could have had any impact upon the jury's consideration of the defendants' punishment. Therefore, defendants do not allege circumstances sufficient to suggest any real probability that the subject of parole played any role in the jury's deliberation. Thus, the extraordinary remedy to examine jurors should not be granted, particularly on an application for post-conviction relief three years after the trial. We conclude that the articles did not impair defendants' fundamental right to a fair trial.

██ Defendants next contend that it was plain error for the court to exclude from the jury any prospective juror who had conscientious scruples against capital punishment. The State has the right to have its case considered by jurors who will abide by the law as it presently exists. The Legislature

has provided that the jury determine *from evidence before it* whether the defendant should be sentenced to death or life imprisonment. See *State v. Mount*, 30 *N. J.* 195, 210 (1959). A juror with conscientious scruples against capital punishment is obviously incapable of determining the appropriate punishment from the evidence presented at the trial. See our discussion of a related issue in *State v. Reynolds, supra*, 41 *N. J.*, at *pp.* 175–176. We therefore conclude that the action of the trial court was proper and *a fortiori* not a denial of fundamental justice. *R. R.* 3:10A–4.

 Defendants further contend that the trial judge, on *voir dire*, was under an affirmative duty to ask prospective jurors whether they had conscientious scruples against life imprisonment in a capital case. The trial judge had no such duty and defense counsel had full opportunity to make such an inquiry. We see no merit in this contention. The trial court committed no error and, of course, there was no denial of fundamental justice.

 Defendants next contend that *N. J. S.* 2A:113–3 is unconstitutional because it does not provide for a standard by which a trial judge may determine whether to accept or reject a *non vult* plea to an indictment for murder.[2] We see no merit to this contention. The defendants made no offer to the trial judge to plead *non vult,* and hence have no standing to raise this point. Furthermore, even if we were to hold the statute invalid, defendants would be in no better position since all such defendants would then be compelled to stand trial. See *State v. Sullivan*, 43 *N. J.* 209, 247 (1964).

---

[2] *N. J. S.* 2A:113–3 provides:

"In no case shall the plea of guilty be received upon any indictment for murder, and if, upon arraignment, such plea is offered, it shall be disregarded, and the plea of not guilty entered, and a jury, duly impaneled, shall try the case.

Nothing herein contained shall prevent the accused from pleading non vult or nolo contendere to the indictment; the sentence to be imposed, if such plea be accepted, shall be either imprisonment for life or the same as that imposed upon a conviction of murder in the second degree."

■ The defendants next contend that after the jury returned its verdict the trial court committed plain error in failing to examine each juror to determine whether he understood that his verdict of guilty of murder in the first degree imposed the death penalty. They urge that while such an examination is unnecessary in an ordinary case, the inadequacy and ambiguity of the trial judge's charge on the issue of punishment required examination in the present case. The jury was polled in the manner approved by this court in *State v. Cleveland*, 6 *N. J.* 316 (1951). We examined the trial judge's charge in the defendants' direct appeal in *State v. Reynolds, supra*, 41 *N. J.*, at *pp.* 187–188, and we were convinced that the jury fully understood that their decision as to punishment required unanimity. The defendants now attempt in essence to relitigate the issue of whether the jurors misunderstood the impact of their verdict. Our prior adjudication upon the merit of this ground for relief precludes its consideration here. *R. R.* 3 :10A–5.

■ The defendants' final contention is that they should have had a bifurcated trial on the separate issues of guilt and punishment such as is now the practice under the Code in California (*Cal. Pen. Code* § 190.1 (1957)). This argument is not of constitutional dimension and hence there was no denial of fundamental justice. *R. R.* 3 :10A–4. See *State v. (Edgar) Smith, supra*, 43 *N. J.*, at *p.* 74.

The judgment of the trial court is affirmed and the stay heretofore granted is vacated.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.