575 A.2d 1340

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DAVID
J. LAURICK, DEFENDANT–RESPONDENT.

Argued January 29, 1990—Decided June 25, 1990.

1

4

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Larry R. Etzweiler* and *J. Grall Robinson,* Deputy Attorneys General, on the briefs).

*Jay G. Trachtenberg* argued the cause for respondent (*Jay G. Trachtenberg,* attorney; *Barbara A. Nyquist,* on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

The question in this case is whether the assertion that a prior guilty plea to a charge of driving while intoxicated (DWI) was without the advice of counsel prevents the imposition of enhanced penalties on a second DWI conviction.

There are two aspects of our analysis. The first is constitutional analysis of the limits on a state's power to impose recidivist penalties on the basis of uncounseled convictions. The second is a more familiar judicial analysis of what constitutes good cause for collateral relief from an earlier judgment of conviction.

██ We hold that with the exception that a prior DWI conviction that was uncounseled in violation of court policy may not be used to increase a defendant's loss of liberty, there is no constitutional impediment to the use of the prior uncounseled DWI conviction to establish repeat-offender status under DWI laws. With respect to collateral consequences of an uncounseled conviction other than a loss of liberty, any relief to be afforded should follow our usual principles for affording post-

conviction relief from criminal judgments, namely, a showing of a denial of fundamental justice or other miscarriage of justice.

I

The significance of the ruling lies in the progressively enhanced penalties that second and third offenders receive under our drunk driving laws. *N.J.S.A.* 39:4–50. Without intending this to be a definitive digest of such provisions, which are often amended, we note the following: Penalties for first offenders include a fine between $250 and $400, detainment between twelve and forty-eight hours at an Intoxicated Driver Resource Center, license suspension for a period between six months and one year, and up to thirty days' imprisonment. *N.J.S.A.* 39:4–50(a)(1). Second offenders must do thirty days of community service, and are subject to a fine between $500 and $1,000, a mandatory two-year license revocation, and from forty-eight hours' to ninety days' imprisonment. *N.J.S.A.* 39:4–50(a)(2). Penalties for third offenders include a mandatory $1,000 fine, a mandatory ten-year license revocation, and a mandatory 180–day prison term, which may be commuted to ninety days with ninety days' community service. *N.J.S.A.* 39:4–50(a)(3). A court imposing a term of imprisonment may sentence an offender to an inpatient rehabilitation program or other facility approved by the Director of the Division of Alcoholism in the Department of Health. In the alternative a court may sentence a first or second offender to an Intoxicated Driver Resource Center. *Ibid.* All DWI offenders must satisfy the screening, evaluation, referral, program, and fee requirements of the Division of Alcoholism's Intoxicated Driving Programs Unit and of the Intoxicated Driver Resource Centers, and must complete a program of alcohol education and highway safety. *N.J.S.A.* 39:4–50(b). In addition, pursuant to the New Jersey Automobile Insurance Reform Act of 1982, *L.*1983, *c.*65, every offender is subject to an insurance surcharge of $1,000 a year for three years, but a third offense within three years results in an increase to $1,500 a year. *N.J.S.A.* 17:29A–35(b)(2). Every

offender must pay a $100 Drunk Driving Enforcement Fund surcharge. *N.J.S.A.* 39:4–50.8.

In this case defendant was arrested for DWI on September 4, 1985. After unsuccessfully challenging breath-test results, he pled guilty in municipal court on June 22, 1987. During the 1987 plea proceedings he admitted that he had pled guilty to the same charge in 1982. He stated, however, that at the earlier proceeding he had been unrepresented by counsel, unaware of his right to counsel, and uninformed of that right by the previous judge. The Law Division judge, who was sitting as Municipal Court Judge, sentenced defendant as a first offender, and ruled in a reported opinion that defendant's prior uncounseled conviction could not be used to enhance punishment absent an intelligent waiver of right to counsel. 222 *N.J.Super.* 636, 537 *A.*2d 792 (1987). He relied on *Rodriguez v. Rosenblatt*, 58 *N.J.* 281, 277 *A.*2d 216 (1971), which established a right to counsel whenever defendant is exposed to a "consequence of magnitude." The Appellate Division affirmed, agreeing with the lower court that in the face of defendant's statement, there could be no presumption that the 1982 municipal court informed defendant of his right to counsel, as it was required to do by *Rule* 3:27–2. 231 *N.J.Super.* 464, 555 *A.*2d 1133 (1989); *see also State v. Carey*, 230 *N.J.Super.* 402, 553 *A.*2d 844 (App.Div.1989) (no presumption that municipal court regularly followed administrative directive to inform defendants of right to counsel).

There were no proofs presented at the 1987 sentencing proceeding to rebut defendant's statement that the 1982 court had failed to advise him of the right to appointed or retained counsel. Stenographic or sound recordings of municipal court proceedings are required to be kept for only three years. *R.* 7:4–5(a). The municipal court judge who presided at the 1982 plea proceeding did not testify. For purposes of this appeal, however, we accept the posture of the case as we have received it, namely, that there was an absence of the *Rodriguez* advisory at the start of the 1982 municipal court proceedings. We

granted certification, 117 *N.J.* 52, 563 *A.*2d 819 (1989), and now reverse.

## II

■ It is now well settled that there is a sixth-amendment right to counsel in felony cases. *Gideon v. Wainwright,* 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799 (1963). In misdemeanor cases there is a right to counsel only if the conviction results in imprisonment. *Argersinger v. Hamlin,* 407 *U.S.* 25, 92 *S.Ct.* 2006, 32 *L.Ed.*2d 530 (1972).

As Justice Jacobs pointed out in *Rodriguez v. Rosenblatt, supra,* 58 *N.J.* at 285, 277 *A.*2d 216, New Jersey has "never utilized the traditional English felony-misdemeanor classification." We have viewed the difference as between indictable offenses and non-indictable offenses, familiarly known as disorderly persons. We have a long history of legislative concern that where an indictment has been returned against a defendant who is indigent, the accused shall be entitled to assigned counsel without cost. *Ibid.* (citing Act of March 6, 1795, *Paterson, Laws* 162 (1800)); *see State v. Rush,* 46 *N.J.* 399, 217 *A.*2d 441 (1966). At the time of the *Rodriguez* decision every person charged with an indictable offense was entitled to retain counsel and to have the office of the Public Defender represent him or her if indigent. Our Rules of Court required that such persons be advised of such rights. *R.* 3:27–1.

In *Rodriguez* the Court recognized that the federal constitutional guarantee of jury trial is inapplicable to petty offenses, which have generally been considered to be those punishable by no more than six months in prison, and noted that it "join[ed] the many state courts which have announced that, pending further controlling decision by the Supreme Court, there will be no inflexible constitutional compulsion to assign counsel without cost to indigents charged in the municipal courts with disorderly person or other petty offenses." 58 *N.J.* at 294, 277 *A.*2d 216.

Nevertheless, considerations of fairness dictated that "as a matter of simple justice, *no indigent defendant should be subjected to a conviction* entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." *Id.* at 295, 277 *A.*2d 216. Thus the Court ruled not as a matter of constitutional compulsion, but in the exercise of its supervisory jurisdiction over procedures in New Jersey courts. The Court explained: "We have on many occasions announced policy rulings which, though not constitutionally or legislatively compelled, have served to protect the proper interests of the defendant and to advance the sound administration of justice in our courts." *Id.* at 294, 277 *A.*2d 216.

In furtherance of the sound administration of justice, our Court has adopted directives detailing procedures for assigning counsel to indigents charged with petty offenses. See Implementing Instructions of the Administrative Director of the Courts, in "Supreme Court Establishes Right to Assigned Counsel in Petty Offenses," 94 *N.J.L.J.* 421 (1971). A Court Rule already in place when *Rodriguez* was decided instructs municipal court judges to inform every person charged with a non-indictable offense "of his right to retain counsel or, if indigent and constitutionally or otherwise entitled by law to counsel, of his right to have counsel assigned without cost." *R.* 3:27-2. The New Jersey Bench Book for Municipal Courts (rev. Jan. 1987) directs that each defendant be informed of those rights individually. *Id.* at c-13-15. In a memorandum to municipal court judges we emphasized the importance of individual advisement when defendants are indigent and face a potential "consequence of magnitude." Memorandum from Chief Justice Wilentz re *Rule* 3:4-2 (Feb. 25, 1986).

## III

What follows, then, from the fact that the *Rodriguez* advisory was not followed? Recall that in this case the core values of

*Rodriguez* are not implicated. Defendant did not claim at the 1987 plea proceedings that he was denied equal protection of the law by reason of indigency at the time of the 1982 proceedings.

To test the proposition, it may be helpful to assume that following his 1982 conviction, defendant, reflecting on the outcome of his case, had consulted an attorney and had asked the attorney to set aside the guilty plea on the basis that he had not been given the notice. And assume as well that he was not indigent at the time.

Although there is no rule specifically allowing for an application for post-conviction relief in the municipal courts, it seems generally to be agreed that our Rules of Court may fairly be said to encompass such a proceeding. In an ably written Law Division opinion, *In re Petition of Santiago,* 104 *N.J.Super.* 110, 248 *A.*2d 701 (1968), *aff'd o.b.,* 107 *N.J.Super.* 243, 258 *A.*2d 31 (App.Div.1969), Judge Artaserse traced the history of the post-conviction relief proceedings in New Jersey and concluded that a "literal reading [that would limit the rules only to criminal offenses would] overlook[ ] the history and intent of the post-conviction procedure." 104 *N.J.Super.* at 114, 248 *A.*2d 701. Granted the petitioner in *Santiago* had suffered a loss of liberty, the analysis remains appropriate and appears to have been generally followed in our courts. *See, e.g., State v. Paladino,* 203 *N.J.Super.* 537, 497 *A.*2d 562 (App.Div.1985); *State v. Zold,* 105 *N.J.Super.* 194, 251 *A.*2d 475 (Law Div.1969), *aff'd o.b.,* 110 *N.J.Super.* 33, 264 *A.*2d 257, *certif. denied,* 57 *N.J.* 131, 270 *A.*2d 34 (1970).

In post-conviction relief proceedings we ordinarily say that a defendant may not raise on collateral attack issues that might reasonably have been raised in a direct appeal. *See R.* 3:22. In addition, we say that a plea of guilt waives all procedural objections that a defendant may have. Of course such a plea may be later challenged on the ground that there was no factual basis for it, *State v. Barboza,* 115 *N.J.* 415, 558 *A.*2d

1303 (1989), or that the defendant was unaware of its penal consequences, *State v. Kovack,* 91 *N.J.* 476, 453 *A.*2d 521 (1982).

But there are exceptions to those general rules. Under *Rule* 3:22–4 a ground not raised on direct appeal can be raised on collateral review if denial of the petition would be contrary to the Constitutions of the United States or the State of New Jersey, or would result in fundamental injustice.

As noted, *Rodriguez* makes it clear that the denial of counsel would not constitute a violation of constitutional right under either state or federal constitutions, so obviously an absence of the notice could not be of constitutional dimension. As to what would constitute fundamental injustice, it may be useful to consider a case such as *State v. Cerbo,* 78 *N.J.* 595, 397 *A.*2d 671 (1979). In that case the Court dealt with a violation of statutory policy rather than, as here, administrative policy, but the principles are the same. The State's wiretap law required that authorized wiretaps be promptly sealed. On post-conviction relief, the defendant raised an issue with respect to that statutory violation. The Court ruled that absent constitutional infringement or the timely raising of an issue available on direct appeal, "relief will be granted in such proceedings only in exceptional circumstances involving a showing of fundamental injustice." *Id.* at 605, 397 *A.*2d 671. Thus the Court concluded that

> [p]ost-conviction relief should not be furnished if its sole purpose would be to vindicate a statutory policy, where the statutory violation has not in any way reflected prosecutorial bad faith or insolence in office nor had the slightest impact upon guilt or innocence or wrought a miscarriage of justice for the individual defendant.
>
> [*Id.* at 607, 397 *A.*2d 671.]

We may translate this ruling to say that if the administrative violation of the *Rodriguez* directive has not wrought a miscarriage of justice for the individual defendant, the absence of notice would not be a ground for relief.

■■ We agree in general with the approach set forth in *State v. Carey, supra,* 230 *N.J.Super.* 402, 553 *A.*2d 844, to the effect that compliance with the *Rodriguez* directive cannot be conclusively presumed just because we have a rule that says such notice will be given. A defendant in a second or subsequent DWI proceeding should have the right to establish that such notice was not given in his or her earlier case, and that if defendant is indigent, the DWI conviction was a product of an absence of notice of the right to assignment of counsel and non-assignment of such counsel without waiver. A non-indigent defendant should have the right to establish such lack of notice as well as the absence of knowledge of the right to be represented by counsel of one's choosing and to prove that the absence of such counsel had an impact on the guilt or innocence of the accused or otherwise "wrought a miscarriage of justice for the individual defendant." *State v. Cerbo, supra,* 78 *N.J.* at 607, 397 *A.*2d 671.

In evaluating, in the case of non-indigents, whether a miscarriage of justice has occurred, "innocence or guilt is indeed relevant among the several considerations which should properly mold the discretion of a judge" in determining whether to relieve a party of a plea. *State v. Johnson,* 131 *N.J.Super.* 252, 256, 329 *A.*2d 560 (App.Div.1974); *see also State v. Cummins,* 168 *N.J.Super.* 429, 433, 403 *A.*2d 67 (Law Div.1979) (applying the same principles in the case of a finding of guilt). On the issue of a demonstration of miscarriage of justice, as on others, the defendant has the burden of proving the right to post-conviction relief. *State v. Zold, supra,* 105 *N.J.Super.* at 203, 251 *A.*2d 475; *see also R.* 3:22 (providing for petition for post-conviction relief). Hence, we disapprove *State v. Breyan,* 240 *N.J.Super.* 619, 573 *A.*2d 998 (Law Div.1990), which, without such showing, applied the opinion below retroactively to allow collateral attack on a prior uncounseled DWI conviction.

■ The proceeding to challenge the collateral effect of such prior convictions should properly be in the municipal court in

which the original conviction was entered. We realize the difficulty in reviewing such dispositions more than three years after the fact when transcripts or tapes of the proceedings are no longer available. Still, it will be much easier in the original court to arrange for a thorough and complete review of the dockets of the proceedings. Sometimes notation of an attorney's entry of an appearance may be in the case file. In addition, any available police records may confirm or dispel the absence of counsel in the proceedings, and in the case of non-indigence, the evidence bearing on guilt or innocence. That requirement of proceeding in the court of original jurisdiction should be equally applicable when the only issue is whether the uncounseled plea precluded imposition of an additional loss of liberty. Resolution of that issue will ordinarily be simpler and more straightforward, with the only consequence that the period of incarceration imposed may not exceed that available for the counseled conviction.

In the future, the hard-copy judgment of conviction in DWI cases should contain a notation by the municipal court that the *Rodriguez* notice has been given and counsel waived. That notation will have presumptive correctness. *See Evid.R.* 9(2)(b) (allowing judicial notice of court records). Our Rule of Court, *Rule* 7:4–6(b), prescribing the contents of a judgment of conviction, should be modified accordingly. In addition, in the future the automated traffic system (ATS) records to be developed on computer base will permit storage of daily docket information for longer periods of time without space or storage problems. These records can be readily retrieved and will almost invariably contain calendar notations.

In this case we have a showing only of a violation of administrative or judicial policy without any showing of prejudicial effect on defendant because it has not been shown that defendant was in any way prejudiced by reason of indigency in such proceedings. Nor, except as we conclude with respect to the extent of later imprisonment, was there violation of consti-

tutional requirement. The strict waiver requirements of *Faretta v. California*, 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975), are implicated only when the right to counsel is of constitutional dimension. We would not go so far as to say that a defendant would have to show that the presence of counsel would have necessarily won the case for him. The importance of counsel in an accusatorial system such as ours is well recognized, *see Rodriguez, supra*, 58 *N.J.* at 285, 277 *A.*2d 216, but to establish injustice there should at least be some showing that the absence of the notice resulted in the unavailability of counsel for one otherwise unable to afford counsel, or in the case of a non-indigent, that the absence of notice had a "real probability" of having played a role in the determination of guilt. *State v. Reynolds*, 43 *N.J.* 597, 602, 206 *A.*2d 750 (1965) (technical error not ground for reversal absent such a showing of prejudice). To conclude otherwise would exalt form over substance. "All else being equal, we see no reason why one who is admittedly guilty of the crime with which he is charged, and who, on the motion, cannot suggest any defense that will be of avail to him, should be permitted—to borrow a phase from *State v. Herman* [47 *N.J.* 73, 79, 219 *A.*2d 413 (1966)]—'to play fast and loose with our courts.'" *State v. Johnson, supra*, 131 *N.J.Super.* at 256, 329 *A.*2d 560.

## IV

 If the conviction, then, be not subject to collateral attack through post-conviction relief on this record, the question remains whether it is invalid for the purpose of enhancing the penalties imposed under the New Jersey Motor Vehicle Act. In *State v. H.G.G.*, 202 *N.J.Super.* 267, 494 *A.*2d 841 (App.Div. 1985), Judge Matthews traced the development of United States Supreme Court doctrine with respect to the use of uncounseled convictions to establish enhanced penalties. He noted that following *Gideon v. Wainwright, supra*, 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799, "the Court consistently held that because an uncounseled felony conviction was constitutionally invalid—and

therefore void—it could not be put to other uses in court." *Id.* 202 *N.J.Super.* at 274, 494 *A.*2d 841; *see Burgett v. Texas*, 389 *U.S.* 109, 88 *S.Ct.* 258, 19 *L.Ed.*2d 319 (1967) (uncounseled felony conviction invalid to enhance punishment under recidivist statute). In contrast, although *Argersinger v. Hamlin, supra*, 407 *U.S.* 25, 92 *S.Ct.* 2006, 32 *L.Ed.*2d 530, prohibits imprisonment for any uncounseled offense, absent waiver, it does not prohibit use of such uncounseled conviction to deny expungement of another conviction. 202 *N.J.Super.* at 274, 494 *A.*2d 841.

Most recently, in *Baldasar v. Illinois*, 446 *U.S.* 222, 100 *S.Ct.* 1585, 64 *L.Ed.*2d 169 (1980), the Court held that an uncounseled misdemeanor conviction (in which a defendant would not have been entitled to counsel because there was no actual imprisonment) could not be used to elevate a subsequent conviction from a misdemeanor to a felony and permit the defendant to be sentenced to three years in prison rather than the one-year maximum. Uncounseled prior convictions cannot be used to enhance punishment by "convert[ing] a subsequent misdemeanor into a felony with a prison term." *Id.* at 222, 100 *S.Ct.* at 1585, 64 *L.Ed.*2d at 172.

Regrettably, the *Baldasar* ruling is far from clear in either its holding or its continuing vitality. There was no Court opinion in *Baldasar*. Four members of the Court shared the understanding above stated. Justice Blackmun, however, concurred in the result because in his view Baldasar, having been originally charged with a felony (carrying an *exposure* to a sentence in excess of six months), could not have been tried without benefit of counsel. Hence his conviction was void for all purposes. As noted, the majority adhered to the *Argersinger* rule that an uncounseled conviction is void only when the *actual* sentence imposed is one of imprisonment. But, as the dissenting members of the Court pointed out, *Scott v. Illinois*, 440 *U.S.* 367, 99 *S.Ct.* 1158, 59 *L.Ed.*2d 383 (1979), explicitly held that "an uncounseled misdemeanor conviction is constitutionally valid if the offender is not jailed." *Baldasar*, 446 *U.S.*

at 230, 100 *S.Ct.* at 1589, 64 *L.Ed.*2d at 176–77 (Powell, J., dissenting). Considering such a conviction constitutionally invalid to enhance punishment for a subsequent misdemeanor conviction creates a hybrid class of convictions, thus illogically burdening trial courts with the task of attempting to predict which misdemeanants are likely to become recidivists. *Id.* at 231–32, 100 *S.Ct.* at 1589–90, 64 *L.Ed.*2d at 177–78. Since the 1980 *Baldasar* ruling did not command a Court opinion, there must be doubt not only of its vitality but of whether the Supreme Court would ever extend its holding.

Not surprisingly then, state courts have been all over the lot on the meaning and effect of *Baldasar*. For example, Pennsylvania holds to the narrowest view of *Baldasar*, advanced by Justice Blackmun, that uncounseled prior convictions may be used to enhance custodial penalties unless the earlier offense was punishable by more than six months' imprisonment. *Commonwealth v. Thomas*, 510 *Pa.* 106, 507 *A.*2d 57 (1986). North Dakota holds to that view as well, but employs its state constitution to expand the prohibition of enhanced prison terms based on any uncounseled prior convictions absent waiver. *State v. Orr*, 375 *N.W.*2d 171 (N.D.1985). Other courts have read *Baldasar* broadly. Maine interprets its teaching, as well as the Maine constitution, to preclude use of any uncounseled conviction to enhance penal sanctions, custodial or non-custodial, in a later proceeding. *State v. Dowd*, 478 *A.*2d 671 (Me. 1984). Kansas has adopted the view advanced by Justice Marshall, that a conviction invalid to impose a custodial sentence is invalid to enhance custodial punishment in a later conviction. *State v. Oehm*, 9 *Kan.App.*2d 399, 680 *P.*2d 309 (1984).

The United States Supreme Court has denied *certiorari* in a Georgia case in which a defendant received an enhanced penalty based on a prior uncounseled DWI conviction. *Moore v. Georgia*, 484 *U.S.* 904, 108 *S.Ct.* 247, 98 *L.Ed.*2d 204 (1987). On Moore's later *habeas corpus* petition the Eleventh Circuit held that *Baldasar* does not forbid enhancing incarceration

penalties based on *any* prior uncounseled conviction, but only based on prior convictions where defendant was uncounseled due to the unavailability of counsel attributable to either indigence or state misconduct. *Moore v. Jarvis*, 885 *F.*2d 1565, 1572–73 (1989).

Although we have genuine doubt, then, about the conclusive effect of *Baldasar*, we prefer not to try to divine the further course of the Court in this area. We are satisfied that there is a core value to *Baldasar* that we should follow: that an uncounseled conviction without waiver of the right to counsel is invalid for the purpose of increasing a defendant's loss of liberty. In the context of repeat DWI offenses, this means that the enhanced administrative penalties and fines may constitutionally be imposed but that in the case of repeat DWI convictions based on uncounseled prior convictions, the actual period of incarceration imposed may not exceed that for any counseled DWI convictions. For example, a third offender with one prior uncounseled conviction could not be sentenced to more than ninety days' imprisonment.

## V .

To sum up:

(1) It is constitutionally permissible that a prior uncounseled DWI conviction may establish repeat-offender status for purposes of the enhanced penalty provisions of the DWI laws of the State of New Jersey. The only constitutional limit is that a defendant may not suffer an *increased* period of incarceration as a result of a *Rodriguez* violation that led to an uncounseled DWI conviction.

(2) No other relief necessarily flows from a *Rodriguez* violation that led to a prior uncounseled DWI conviction. The judicial policies expressed in *Rodriguez v. Rosenblatt*, of giving notice to accused of a right to be represented by counsel, do not create a constitutional entitlement to such notice. Nor does the absence of such notice demonstrate a fundamental injustice

unless there be some showing in post-conviction relief proceedings that it prejudiced the defendant in that the defendant (a) was unaware of such rights, and (b) if indigent, would have derived benefit from the notice by seeking the assistance of counsel. A non-indigent defendant would have to show in addition that the lack of notice otherwise affected the outcome. No such showing was made in this case.

(3) Post-conviction relief from the effect of prior convictions should normally be sought in the court of original jurisdiction, which will be in the best position to evaluate whether there has been any denial of fundamental justice. Appeals from the disposition in that court shall be combined with any appeal from proceedings involving the repeat offense.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for further proceedings in accordance with this opinion. On this record, the only relief warranted is that defendant's imprisonment for this second violation not exceed thirty days. Nor may the forty-eight hours of custody required of second offenders by *N.J.S.A.* 39:4–50(a)(2) be regarded as mandatory. As to any other relief, defendant shall have the right, within thirty days of the remand, to apply to the court of original jurisdiction for post-conviction relief from the judgment entered there in accordance with the principles set forth in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—None.