877 A.2d 1209

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. OLGA HRYCAK, DEFENDANT–APPELLANT.

Argued May 3, 2005—Decided July 20, 2005.

*Michael P. Hrycak* argued the cause for appellant.

*James L. McConnell,* Assistant Prosecutor, argued the cause for respondent (*Wayne J. Forrest,* Somerset County Prosecutor, attorney).

Justice WALLACE, JR. delivered the opinion of the Court.

This case involves the maximum jail sentence that may be imposed on a third-time offender under the Driving While Intoxicated (DWI) statute, *N.J.S.A.* 39:4-50, when one of the prior convictions was uncounseled. The Municipal Court sentenced defendant as a third-time offender and imposed a ninety-day county jail sentence with ninety days of community service. The Superior Court, Law Division imposed the same sentence and the Appellate Division affirmed in an unpublished opinion.

We held in *State v. Laurick,* 120 *N.J.* 1, 16, 575 *A.2d* 1340 (1990), *cert. denied,* 498 *U.S.* 967, 111 *S.Ct.* 429, 112 *L.Ed.2d* 413 (1990), the maximum jail sentence that could be imposed on a third-time offender of the DWI statute with one prior uncounseled conviction was the maximum jail sentence that could be imposed for a second-time offender, i.e. ninety days, but that the enhanced administrative penalties and fines for a third-time offender should be imposed. Subsequent to our decision in *Laurick,* the United States Supreme Court held that an uncounseled prior conviction "may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." *Nichols v. United States,* 511 *U.S.* 738, 746–47, 114 *S.Ct.* 1921, 1927, 128 *L.Ed.2d* 745, 754 (1994).

We granted defendant's petition for certification to reconsider our decision in *Laurick.* We now reaffirm our holding in *Laurick* that an uncounseled DWI conviction may not be used to enhance the period of incarceration for a subsequent offense. *Supra,* 120 *N.J.* at 16, 575 *A.2d* 1340. We reverse and remand for a determination of whether defendant's first DWI conviction was uncounseled, and if so, the maximum jail sentence that may be imposed

shall not exceed the maximum jail sentence permitted for a second-time DWI offender.

## I.

Defendant was charged with DWI, in violation of *N.J.S.A.* 39:4–50, on September 28, 2002. She also had been convicted of DWI on two prior occasions. Defendant's first DWI offense occurred on May 18, 1990. She pled guilty and on August 20, 1990, received the following sentence: $250 fine, $25 court costs, $100 surcharge, 12 to 48 hours at the Intoxicated Resource Center, and a six-month suspension of her driving privileges. Defendant's second DWI offense occurred on January 16, 1999. She pled guilty, and because she claimed her first offense was uncounseled, she moved before the Municipal Court to limit any period of incarceration to that of a first-time offender in accordance with the holding in *Laurick, supra,* 120 *N.J.* 1, 575 *A.*2d 1340. The trial court granted her motion and sentenced defendant as a first-time offender without any period of incarceration.

In the present case, for her third DWI conviction, defendant moved to be sentenced as a second-time offender. Defendant informed the court that on the occasion of her second DWI conviction, based on her *Laurick* application, she was sentenced as a first-time offender. Defendant also argued that because more than ten years had passed between her first conviction in 1990 and this one in 2002, she should be treated as a second-time offender under the statute. The Municipal Court disagreed and sentenced defendant as a third-time offender. Her sentence encompassed ninety days in jail with ninety days of community service, $1002 fine, $200 DWI surcharge, $75 Safe Neighborhood Program penalty, $50 Violent Crimes Compensation Board penalty, a ten-year suspension of her driving privilege, and $30 in court costs.

On *de novo* appeal to the Law Division, the court concluded that defendant should be sentenced as a third-time offender and imposed the same sentence as the Municipal Court. The Law Division stayed imposition of sentence for twenty days to permit

defendant to perfect her appeal. The Appellate Division granted defendant's motion to stay the jail portion of her sentence, but later, in an unpublished opinion, affirmed the judgment. The panel concluded that "[d]efendant's combined ninety-day jail sentence and ninety-day community service obligation, an optional sentence for third-time offenders under the then existing provisions of *N.J.S.A.* 39:4–50(a)(3), did not represent a greater period of incarceration than that which could have been imposed had she been a second-time offender." Although not raised before the trial court, the panel found that the record was devoid of any proofs to establish defendant's claim that her first DWI conviction was uncounseled or that the lack of counsel played any role in her decision to plead guilty. The panel also rejected defendant's arguments that the more than ten-year lapse between convictions required second-time offender treatment and that the administrative penalties should be limited to those for a second-time offender. We granted defendant's petition for certification. 181 *N.J.* 285, 854 *A.*2d 919 (2004).

## II.

Defendant contends that the Appellate Division decision conflicts with an earlier decision in *State v. Latona,* 307 *N.J.Super.* 387, 389, 704 *A.*2d 1045 (App.Div.), *certif. denied,* 154 *N.J.* 607, 713 *A.*2d 498 (1998), that expressly adhered to this Court's holding in *Laurick* limiting the jail sentence for a third-time offender with a prior uncounseled conviction to the period of incarceration for a second-time offender. Further, defendant argues that the Appellate Division erred in concluding that her ninety-day jail term combined with ninety days community service did not exceed the maximum period of incarceration for a second-time offender. Defendant also urges us to conclude that the Appellate Division mistakenly read *Nichols, supra,* 511 *U.S.* 738, 114 *S.Ct.* 1921, 128 *L.Ed.*2d 745, to abrogate this Court's decision in *Laurick.*

Contrary to defendant, the State argues that defendant was properly sentenced as a third-time offender. At oral argument

the State asserted that we should follow *Nichols* and conclude that an uncounseled DWI conviction may be used to enhance defendant's jail sentence. Further, the State argues that *Laurick* requires defendant to prove that her conviction was uncounseled, and she failed to do so.

### III.

This case affords us the opportunity to review our decision in *Laurick* and determine anew whether we should continue to follow its principles or, in light of the United States Supreme Court's decision in *Nichols,* take a different path. Before addressing that issue, we briefly summarize the relevant DWI statute.

### A.

Our DWI laws provide for progressively enhanced penalties for repeat offenders. Although *N.J.S.A.* 39:4–50 has been amended, the version of the statute in effect at the time of defendant's conviction in this case provided for sanctions for a first-time DWI offender of a fine between $250 and $400, detainment between twelve and forty-eight hours at an Intoxicated Driver Resource Center, suspension of driving privilege for a period between six months and one year, and up to thirty days imprisonment. *N.J.S.A.* 39:4–50(a)(1). For a second-time offender, the penalties increased to provide a fine between $500 and $1,000, a thirty-day period of community service, a two-year suspension of driving privilege, and imprisonment between forty-eight consecutive hours and ninety days. *N.J.S.A.* 39:4–50(a)(2). For a third-time offender, the penalties further increased to provide that

> a person shall be subject to a fine of $1,000.00, and shall be sentenced to imprisonment for a term of not less than 180 days, except that the court may lower such term for each day, not exceeding 90 days, served performing community service in such form and on such terms as the court shall deem appropriate under the circumstances and shall thereafter forfeit his right to operate a motor vehicle over the highways of this State for 10 years.
>
> [*N.J.S.A.* 39:4–50(a)(3).]

## B.

We turn now to discuss *Laurick*, and the weight we should accord to *Nichols*. In *Laurick*, we held that absent waiver of counsel, a prior uncounseled conviction

is invalid for the purpose of increasing a defendant's loss of liberty. In the context of repeat DWI offenses, this means that the enhanced administrative penalties and fines may constitutionally be imposed but that in the case of repeat DWI convictions based on uncounseled prior convictions, the actual period of incarceration imposed may not exceed that for any counseled DWI convictions. For example, a third-offender with one prior uncounseled conviction could not be sentenced to more than ninety days' imprisonment.

[*Supra,* 120 *N.J.* at 16, 575 *A.*2d 1340.]

In reaching that conclusion, we canvassed the development of the United States Supreme Court doctrine concerning the use of uncounseled convictions. We noted the holding in *Gideon v. Wainwright,* 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799 (1963), that "there is a sixth-amendment right to counsel in [all] felony cases[,]" but pointed out that for misdemeanor offenses there is a right to counsel "only if the conviction results in imprisonment." *Id.* at 7, 575 *A.*2d 1340 (citing *Argersinger v. Hamlin,* 407 *U.S.* 25, 92 *S.Ct.* 2006, 32 *L.Ed.*2d 530 (1972)). In particular, we agreed with the Appellate Division that following *Gideon,* "the Court consistently held that because an uncounseled felony conviction was constitutionally invalid—and therefore void—it could not be put to other uses in court." *Id.* at 13–14, 575 *A.*2d 1340 (quoting *State v. H.G.G.,* 202 *N.J.Super.* 267, 274, 494 *A.*2d 841 (App.Div. 1985)). The holdings were contrasted with *Argersinger, supra,* 407 *U.S.* 25, 92 *S.Ct.* 2006, 32 *L.Ed.*2d 530, where the Supreme Court disallowed imprisonment for an uncounseled offense, but did not "prohibit use of such uncounseled conviction to deny expungement of another conviction." *Id.* at 14, 575 *A.*2d 1340 (citation omitted).

We noted that in *Baldasar v. Illinois,* 446 *U.S.* 222, 100 *S.Ct.* 1585, 64 *L.Ed.*2d 169 (1980), there was no majority Court opinion. *Ibid.* We explained that four members of the Court concluded that "[u]ncounseled prior convictions cannot be used to enhance punishment by 'convert[ing] a subsequent misdemeanor into a felony

with a prison term.' ." *Ibid.* We emphasized, however, that because the *"Baldasar"* ruling did not command a [majority] Court opinion, there must be doubt not only of its vitality but of whether the Supreme Court would ever extend its holding." *Id.* at 15, 575 *A.*2d 1340. We concluded that

> [a]lthough we have genuine doubt, then, about the conclusive effect of *Baldasar,* we prefer not to try to divine the further course of the Court in this area. We are satisfied that there is a core value to *Baldasar* that we should follow: that an uncounseled conviction without waiver of the right to counsel is invalid for the purpose of increasing a defendant's loss of liberty. In the context of repeat DWI offenses, this means that the enhanced administrative penalties and fines may constitutionally be imposed but that in the case of repeat DWI convictions based on uncounseled prior convictions, the actual period of incarceration imposed may not exceed that for any counseled DWI convictions. For example, a third offender with one prior uncounseled conviction could not be sentenced to more than ninety days' imprisonment.
>
> [*Id.* at 16, 575 *A.*2d 1340.]

Several years after our decision in *Laurick,* the United States Supreme Court resolved the uncertainty created by *Baldasar* when it decided *Nichols, supra,* 511 *U.S.* 738, 114 *S.Ct.* 1921, 128 *L.Ed.*2d 745. The Court considered the question whether it was unconstitutional to consider defendant's previous uncounseled misdemeanor conviction at the sentencing for a subsequent offense. *Id.* at 740, 114 *S.Ct.* at 1924. The Court answered the question in the negative, overruled the decision in *Baldasar,* and held that "consistent with the Sixth and Fourteenth Amendments of the Constitution, [ ] an uncounseled misdemeanor conviction, ... is also valid when used to enhance punishment at a subsequent conviction." *Id.* at 748–49, 114 *S.Ct.* at 1928.

## C.

Although we have not had the occasion to speak to this issue since the Court decided *Nichols,* our Appellate Division addressed a similar situation in *Latona, supra,* 307 *N.J.Super.* 387, 704 *A.*2d 1045. In *Latona,* much like the present case, the question was whether the defendant should be sentenced as a second or third-time offender for a third DWI conviction. *Id.* at 388, 704 *A.*2d 1045. The defendant's first conviction was uncounseled and he

was indigent at that time. *Ibid.* The State argued that because the United States Supreme Court in *Nichols* overruled the holding in *Baldasar,* and because this Court relied in part on *Baldasar* in deciding *Laurick,* if given the opportunity, this Court "would follow *Nichols* and modify its *Laurick* decision" to require the defendant to be sentenced as a third-time DWI offender without any reduction in the jail time. *Id.* at 389, 704 *A.*2d 1045. Judge Kimmelman, writing for the Appellate Division, rejected the State's argument and stated:

> This court may not speculate on whether our Supreme Court would rethink its holding in *Laurick* because a subsequent United States Supreme Court decision overruled one of the cases upon which *Laurick* relied. A close reading of *Laurick* indicates much authority and reasoning apart from *Baldasar* to support the decision. As to *Baldasar,* the Court pointedly said:
>
> > We are satisfied that there is a core value to *Baldasar* that we should follow: that an uncounseled conviction without waiver of the right to counsel is invalid for the purpose of increasing a defendant's loss of liberty.
>
> For present purposes, we are bound to adhere to *Laurick,* and to the 'core value' expressed, which we find to be applicable to this case.
>
> [*Ibid.* (internal citations omitted.)]

We are in accord with the view expressed by Judge Kimmelman. Our decision in *Laurick,* wholly apart from the rationale in *Baldasar,* relied upon *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 277 *A.*2d 216 (1971). *Supra,* 120 *N.J.* at 7–14, 575 *A.*2d 1340. In *Rodriguez,* we addressed the question whether indigent defendants charged with disorderly person offenses were entitled to have assigned counsel. *Supra,* 58 *N.J.* at 283, 277 *A.*2d 216. In answering that question in the affirmative, we emphasized our long held view that criminal defendants have a right to counsel. *Id.* at 285, 277 *A.*2d 216. We recognized that it was not yet known whether the Supreme Court would limit to felony cases the Sixth Amendment right to counsel established in *Gideon,* but that other courts had done so. *Id.* at 286, 277 *A.*2d 216. Ultimately, we determined that although not constitutionally or legislatively compelled, "considerations of fairness dictate that appropriate steps be taken to protect unrepresented indigent defendants against injustices which may result from their inability to cope fairly with municipal court charges against them." *Id.* at 294, 277 *A.*2d 216.

In "the sound administration of justice in our courts" and "to protect the proper interests of the defendant[,]" *ibid.*, we concluded that "as a matter of simple justice, no indigent defend[a]nt should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." *Id.* at 295, 277 *A.*2d 216.

We confirmed that holding in *Laurick*, where "we emphasized the importance of individual advisement [of the right to counsel] when defendants are indigent and face a potential 'consequence of magnitude.' " *Supra*, 120 *N.J.* at 8, 575 *A.*2d 1340. We then addressed what should happen if an indigent defendant were nevertheless not informed of his or her rights and pled guilty. *Ibid.* We concluded that the defendant in a "subsequent DWI proceeding should have the right to establish that such notice was not given in his or her earlier case, and that ... the DWI conviction was a product of an absence of notice of the right to assignment of counsel and non-assignment of such counsel without waiver." *Id.* at 11, 575 *A.*2d 1340. On the other hand, if the defendant was not indigent and was not informed of those rights, then he or she would have to "prove that the absence of such counsel had an impact on the guilt or innocence of the accused or otherwise 'wrought a miscarriage of justice for the individual defendant.' " *Ibid.* (quoting *State v. Cerbo*, 78 *N.J.* 595, 607, 397 *A.*2d 671 (1979)). We sought to institute procedures that would assist in providing a record to evidence that the court informed the defendant of his right to counsel. We stated that "[i]n the future, the hard-copy judgment of conviction in DWI cases should contain a notation by the municipal court that the *Rodriguez* notice has been given and counsel waived." *Id.* at 12, 575 *A.*2d 1340.

Having recognized earlier in the opinion that "a defendant may not raise on collateral attack issues that might reasonably have been raised in a direct appeal[,]" *id.* at 9, 575 *A.*2d 1340, we then discussed whether the uncounseled conviction was nevertheless

invalid for enhancement in sentencing. *Id.* at 13, 575 *A.*2d 1340. It was in that context that we reviewed the holding in *Baldasar* and recognized that because the ruling in *Baldasar* "did not command a Court opinion, there must be doubt not only of its vitality but of whether the Supreme Court would ever extend its holding." *Id.* at 15, 575 *A.*2d 1340.

We note also that prior to our decision in *Rodriguez,* our Court Rules provided for the right to counsel for certain non-indictable offenses. *See* Pressler, *Current N.J. Court Rules,* comment 4 on *R.* 7:3–2 (2005). Our current Court Rules provide that every person "charged with a non-indictable offense" shall be advised of his or her "right to retain counsel and, if indigent and [constitutionally or otherwise] entitled by law to the appointment of counsel, [of his or her] right" to have counsel assigned without cost. *R.* 3:4–2(c)(3).[1] Thus, we provide for the right to counsel in DWI cases because the defendant faces a "consequence of magnitude." *Rodriguez, supra,* 58 *N.J.* at 295, 277 *A.*2d 216.

### D.

With the above as the background, we take this opportunity to reaffirm our decision in *Laurick* that "[i]n the context of repeat DWI offenses, . . . the enhanced administrative penalties and fines may constitutionally be imposed but that in the case of repeat DWI convictions based on uncounseled prior convictions, the actual period of incarceration imposed may not exceed that for any counseled DWI convictions." *Supra,* 120 *N.J.* at 16, 575 *A.*2d 1340. To be sure, the United States Supreme Court has made it clear that federal law does not prohibit the use of a prior uncounseled conviction for enhancement of a subsequent conviction. *Nichols, supra,* 511 *U.S.* at 747–48, 114 *S.Ct.* at 1927. Despite the

---

[1] "[T]his rule derives from *R* [*ule*] 3:4–2(b), where it had been reallocated, as part of the 1995 revision of Part III from *R* [*ule*] 3:27–2[,] [which] had been adopted as part of the 1969 revision and was substantially the same as the source rule adopted in June, 1967." Pressler, *supra,* comment 4 on *R.* 7:3–2.

*Nichols* holding, we continue to adhere to our position set forth in *Rodriguez* that an uncounseled "indigent defend[a]nt should [not] be subjected to a conviction entailing imprisonment in fact or other consequence[s] of magnitude[.]" *Supra*, 58 *N.J.* at 295, 277 *A.2d* 216. We are convinced that a prior uncounseled DWI conviction of an indigent is not sufficiently reliable to permit increased jail sanctions under the enhancement statute. A contrary conclusion would severely undermine the policy embodied in *Rodriguez*, and our Court Rules. We will not do that. In short, we affirm the continuing vitality of *Laurick* as it applies to our jurisprudence.

## IV.

A defendant is faced with a three-step undertaking in proving that a prior uncounseled DWI conviction should not serve to enhance the jail component of a sentence imposed on a subsequent DWI conviction. As a threshold matter, the defendant has the burden of proving in a second or subsequent DWI proceeding that he or she did not receive notice of the right to counsel in the prior case. He or she must then meet the two-tiered *Laurick* burden. *Supra*, 120 *N.J.* at 11, 575 *A.2d* 1340. In that vein, if defendant proves that notice of the right to counsel was not provided, the inquiry is then bifurcated into whether the defendant was indigent or not indigent. "[I]f [the] defendant [was] indigent, [the defendant must prove that] the DWI conviction was a product of an absence of notice of the right to assignment of counsel and non-assignment of such counsel without waiver." *Ibid.* On the other hand, if the defendant was not indigent at the time of the prior uncounseled conviction,

> [the] defendant should have the right to establish such lack of notice as well as the absence of knowledge of the right to be represented by counsel of one's choosing and to prove that the absence of such counsel had an impact on the guilt or innocence of the accused or otherwise 'wrought a miscarriage of justice for the individual defendant.'
>
> [*Ibid.* (quoting *Cerbo, supra*, 78 *N.J.* at 607, 397 *A.2d* 671).]

Here, assuming defendant met the entirety of her burden with respect to her first DWI conviction, the maximum period of incarceration that she could have received as a third-time offender with one prior uncounseled offense was ninety days. The other enhanced administrative penalties for repeat-offenders were still required. *Laurick, supra,* 120 *N.J.* at 16, 575 *A.*2d 1340.

## V.

Defendant argues that her sentence of a ninety-day prison term and a ninety-day community service requirement constitutes a greater period of incarceration than that provided for a second-time DWI offender. We agree.

The second-time offender provision directs that a person "shall be sentenced to imprisonment for a term of not less than 48 consecutive hours, ... nor more than 90 days[.]" *N.J.S.A.* 39:4–50(a)(2). Further, for a second violation the court *must impose* "*community service for a period of 30 days[.]*" *Ibid.* (emphasis added). However, for a third or subsequent DWI violation, *N.J.S.A.* 39:4–50(a)(3) provides that the person "shall be sentenced to imprisonment for a term of *not less than 180 days,* except that the court *may lower such term for each day, not exceeding 90 days, served performing community service* [.]" [2] (Emphasis added).

■ That provision authorizes the court to impose community service on a third-time offender to reduce the 180 day mandatory jail term. Because we find the plain meaning of the statute is clear, we must enforce it as written. *State v. Reiner,* 180 *N.J.* 307, 311, 850 *A.*2d 1252 (2004). Therefore, in order for defendant to be required to serve ninety days of community service, the court had to first impose a period of incarceration of 180 days and then lower it for each day of the ninety days of community service.

---

[2] The statute was amended, effective January 20, 2004, to eliminate the community service provision. Instead, the court may now lower the 180 days in jail "for each day, not exceeding 90 days, served participating in a drug or alcohol inpatient rehabilitation program...." *N.J.S.A.* 39:4–50(a)(3)(Supp.2004).

That would be an impermissible sentence as applied to defendant because it is equivalent to a period of incarceration greater than ninety days.

We recognize, however, that the legislative intent could not have been to provide a greater penalty for a second-time offender (a maximum of ninety days imprisonment and thirty-days community service) than for a third-time offender with one prior uncounseled conviction (a maximum of ninety days imprisonment with no community service).

Recently, we faced a comparable anomaly. In *Reiner*, the question was "whether the heightened penalties contained in *N.J.S.A.* 39:4–50(g) (subsection (g)), applicable upon conviction of a second [DWI] offense ... within 1,000 feet of school property, may be imposed when a defendant's first DWI offense did not occur within" a school zone. *Supra*, 180 *N.J.* at 309, 850 *A.*2d 1252. We held that although the defendant was a first-time offender in respect of the subsection (g) conviction, because he was a second-time offender of subsection (a) (a DWI conviction without regard to a school zone), the defendant should be sentenced in accordance with the first-time subsection (g) penalties, and with the enhanced penalties for a second-time offender under subsection (a). *Id.* at 319, 850 *A.*2d 1252.

We reach a similar result in the present case. To fulfill the legislative intent, we read the DWI statute for a third-time offender with one prior uncounseled DWI conviction to allow for the imposition of incarceration no greater than that for a second-time offender, i.e. ninety days, and to allow for the imposition of the second-time offender requirement of thirty days of community service. To be sure, a third-time offender with one prior uncounseled DWI conviction is still subject to administrative penalties applicable to a third-time offender under *N.J.S.A.* 39:4–50(a)(3).

### VI.

We make one final observation. Our reading of the transcript before the municipal court reveals that defendant's major

focus was to seek sentencing as a second-time offender because more than ten years passed between her first and third DWI convictions. Although defendant informed the Municipal Court that upon the occasion of her second DWI conviction, "based on a *Laurick* application," the Bridgewater Municipal Court had sentenced her as a first-time offender, the court made no finding concerning whether defendant's first DWI conviction was uncounseled. Before the Law Division, defendant argued that the holding in *Laurick* required that she be sentenced as a second-time DWI offender. In rejecting that contention, the Law Division did not address defendant's proof that her first DWI conviction was uncounseled. Because neither trial court decided whether defendant satisfied her burden to prove that her first DWI conviction was uncounseled, we must remand for the Law Division to make that determination.

## VII.

In summary, we remand for defendant to establish her *Laurick* burden with respect to her first DWI conviction. If defendant fails to do so, the previously imposed sentence stands. If, however, defendant satisfies her *Laurick* burden, the trial court shall impose a period of incarceration not to exceed the maximum period of incarceration that the Legislature has proscribed for a second-time DWI offender and the administrative penalties for a third-time DWI conviction, along with the period of community service provided for a second-time DWI offender.

We reverse and remand to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ, Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.