950 A.2d 879

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JANET GELMAN, NOW KNOWN AS CAITLIN
RYERSON, DEFENDANT–APPELLANT.

Argued March 25, 2008—Decided July 8, 2008.

*Janet Gelman* n/k/a *Caitlin Ryerson* argued the cause pro se.

*Paula C. Jordao,* Assistant Prosecutor, argued the cause for respondent (*Robert A. Bianchi,* Morris County Prosecutor, attorney).

Justice ALBIN delivered the opinion of the Court.

A person found guilty of "engag[ing] in prostitution," *N.J.S.A.* 2C:34–1(b)(1), is punishable as a disorderly person, "except that a second or subsequent conviction for *such an offense* constitutes a

crime of the fourth degree," *N.J.S.A.* 2C:34–1(c)(4) (emphasis added). With that law in mind, a Morris County grand jury returned an indictment charging defendant Janet Gelman with fourth-degree engaging in prostitution based, in part, on defendant's prior petty disorderly persons conviction for prostitution under a differently-worded predecessor statute, *L.* 1978, *c.* 95, § 2C:34–1 (current version at *N.J.S.A.* 2C:34–1). In this appeal, we must decide whether that petty disorderly persons conviction was a legally cognizable predicate offense under the current statute, thus justifying the upgraded charge of fourth-degree prostitution.

We now hold that the current *N.J.S.A.* 2C:34–1—even after consideration of its legislative history—is insolubly ambiguous concerning whether a defendant can be charged with the fourth-degree crime of prostitution based on a prior petty disorderly persons conviction under the predecessor statute. We therefore are compelled to apply the doctrine of lenity and dismiss the indictment.

## I.

### A.

The indictment against defendant was based on the testimony of Dover Township Police Sergeant Edward O'Rourke, the sole witness to testify before the Morris County grand jury. In March 2004, Sergeant O'Rourke was assigned to an undercover operation conducted by the Morris County Prosecutor's Office targeting businesses and individuals suspected of involvement in prostitution activities. On March 18, 2004, Sergeant O'Rourke made a telephone call to the Pink Garter escort agency, which advertised its services in *The Star Ledger*. During a conversation with defendant, he arranged to meet with a woman named "Cindy" the following night at the Hilton Garden Inn in Rockaway Township. He was told that the cost for the "date" would be $150 per hour.

Sergeant O'Rourke thought that defendant acted overly suspicious, requesting that he provide various forms of identification

(i.e., driver's license and credit card numbers), and he feared that she might have guessed that he was part of a police investigation. Accordingly, within five minutes of scheduling the appointment, he called the agency back and left a voice mail message canceling the "date."

The next evening, Sergeant O'Rourke went to the room in the Hilton Garden Inn that had been booked for undercover assignations with escorts. A back-up team was located in an adjacent room. To Sergeant O'Rourke's surprise, at 7 p.m., defendant knocked on his hotel door. After he let her in, defendant asked for his driver's license and credit card and checked the room, it appeared, for surveillance equipment. O'Rourke showed her a driver's license and related that he had recently separated from his wife and was living at the Hilton. When she expressed her suspicions about his story, he became "indignant" and told her that he no longer needed her services and that she could leave.

She decided to stay, and as the two sat on the bed, she began to give O'Rourke a back rub. She also told him to turn up the volume of the television, which he suspected was for the purpose of drowning out any recording device. Defendant told O'Rourke that she needed the $150 in advance for the date. O'Rourke then gave her $150 in cash and asked her "how much extra it would be for anal intercourse." With that, defendant became visibly upset, threw the money on the floor, and said, " 'I don't like the questions that you're asking me.' " She then stormed out of the room and was arrested in the hallway.

Sergeant O'Rourke informed the grand jury that defendant's "criminal history report" indicated that she had been convicted of prostitution on December 27, 1989 in Parsippany–Troy Hills. Based on Sergeant O'Rourke's testimony and the prior conviction, the grand jury indicted defendant for fourth-degree engaging in prostitution.

### B.

The trial court dismissed the indictment, finding that defendant's 1989 petty disorderly persons conviction for soliciting in a

public place under the predecessor prostitution statute, *L.* 1978, *c.* 95, § 2C:34–1, did not constitute a predicate offense for upgrading the disorderly persons offense of prostitution to a fourth-degree crime under the current prostitution statute, *N.J.S.A.* 2C:34–1(c)(4).[1] In reaching that conclusion, the court analyzed the grading provision of *N.J.S.A.* 2C:34–1(c)(4), which provides that "engag[ing] in prostitution," *N.J.S.A.* 2C:34–1(b)(1), is "a disorderly persons offense . . . except that a second or subsequent conviction for *such an offense* constitutes a crime of the fourth degree," *N.J.S.A.* 2C:34–1(c)(4) (emphasis added). Finding that the words "such an offense" clearly referred back to the term "disorderly persons offense," the court determined that defendant's prior *petty* disorderly persons offense was not a predicate conviction under the statute and therefore defendant could not be charged with a fourth-degree crime.

Alternatively, even in light of the statute's legislative history, the court held that the statutory language was, at best, ambiguous, yielding two possible interpretations, one favoring the State and the other favoring defendant. Because, in resolving a statutory ambiguity, penal statutes are strictly construed against the State, the court based its dismissal of the indictment on that alternate ground as well.

After the trial court denied the State's motion for reconsideration, the Appellate Division granted the State's motion for leave to appeal.

## C.

In an unpublished opinion, the Appellate Division reversed the trial court and reinstated the indictment. The panel "discern[ed] no ambiguity" in the meaning of the applicable provisions of the current prostitution statute, *N.J.S.A.* 2C:34–1(b)(1) and (c)(4).

---

[1] Defendant has represented herself before the trial court, Appellate Division, and this Court.

The panel held that in both 1989 and 2004 defendant was charged with the same prohibited act—"offering to engage in sexual activity in exchange for money."[2] Because defendant was convicted of committing an act of prostitution in 1989, the panel maintained that a conviction of the 2004 charge would constitute "a second or subsequent conviction for such an offense," thus justifying the elevation of what would ordinarily be a disorderly persons offense to an indictable fourth-degree crime. The Appellate Division denied defendant's motion for reconsideration.

We granted defendant's motion for leave to appeal, 192 *N.J.* 474, 932 *A.*2d 26 (2007), limited to the issues of "(1) whether a conviction under former *N.J.S.A.* 2C:34–1(a)(2) constitutes 'such an offense' for purposes of enhanced grading under *N.J.S.A.* 2C:34–1(c)(4); and (2) whether a prior uncounseled conviction of a petty disorderly persons offense can be used to elevate a disorderly persons offense to an indictable offense under a conversion-of-charge statute." Ultimately, we must dismiss defendant's indictment because we cannot conclude that defendant's 1989 petty disorderly persons conviction is "such an offense" for enhanced grading purposes under *N.J.S.A.* 2C:34–1(c)(4). Therefore, we need not address the issue concerning the use of a prior uncounseled conviction in this case.

---

[2] In reaching that conclusion, the panel referred to facts included in the police report associated with defendant's 1989 conviction—a report that was not before the grand jury. Additionally, there is nothing in the record to suggest that defendant, in entering her 1989 plea, gave a factual basis that mirrored the police report. It should be noted that in *Shepard v. United States*, 544 *U.S.* 13, 125 *S.Ct.* 1254, 161 *L.Ed.*2d 205 (2005), the United States Supreme Court held that in determining whether a defendant is subject to a statute's enhanced-sentencing provision for repeat offenders, a court is prohibited from looking to "police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for" a particular prior offense. *Id.* at 15, 125 *S.Ct.* at 1257, 161 *L.Ed.*2d at 211. Rather, the court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Ibid.*

## II.

### A.

Our task is to interpret *N.J.S.A.* 2C:34–1(c)(4) to determine whether defendant was properly charged with the fourth-degree crime of engaging in prostitution. The primary goal in construing any statute is to divine the Legislature's intent. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). As always, we begin by examining the actual words of the statute, giving them their ordinary and commonsense meaning. *Ibid.* If the meaning of those words on their face is clear enough to yield the answer, we look no further. *Ibid.* Only if the statutory language is susceptible to "more than one plausible interpretation" do we turn to such extrinsic aids as legislative history for help in deciphering what the Legislature intended. *Id.* at 492–93, 874 *A.*2d 1039.

Moreover, we are guided by the doctrine of lenity, which holds that when interpreting a criminal statute, ambiguities that cannot be resolved by either the statute's text or extrinsic aids must be resolved in favor of the defendant. *United States v. Bass,* 404 *U.S.* 336, 348, 92 *S.Ct.* 515, 523, 30 *L.Ed.*2d 488, 497 (1971) ("[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."); *State v. Reiner,* 180 *N.J.* 307, 318, 850 *A.*2d 1252 (2004) ("When the text of a statute and extrinsic aids do not enlighten us satisfactorily concerning the Legislature's intent, our obligation is to construe the statute strictly, against the State and in favor of the defendant."); *see also State v. Froland,* 193 *N.J.* 186, 194, 936 *A.*2d 947 (2007). The doctrine of lenity is founded on the long-standing and fundamental principle that a person facing a criminal charge is entitled to " 'fair warning . . . of what the law intends to do if a certain line is passed.' " *Bass, supra,* 404 *U.S.* at 347–48, 92 *S.Ct.* at 522, 30 *L.Ed.*2d at 496 (quoting *McBoyle v. United States,* 283 *U.S.* 25, 27, 51 *S.Ct.* 340, 341, 75 *L.Ed.* 816, 818 (1931)). That principle " 'embodies the instinctive distaste against men [and women]

languishing in prison unless the lawmaker has clearly said they should.'" *Bass, supra,* 404 *U.S.* at 348, 92 *S.Ct.* at 523, 30 *L.Ed.*2d at 497 (quoting H. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes, in Benchmarks* 196, 209 (1967)).

### B.

■ At issue here is the meaning of the phrase "such an offense" in the grading provision of the current prostitution statute. *N.J.S.A.* 2C:34–1(b)(1) provides that "[a] person commits an offense if ... [t]he actor engages in prostitution." The grading provision, *N.J.S.A.* 2C:34–1(c)(4), states that "[a]n offense under subsection b. constitutes a disorderly persons offense if the offense falls within paragraph (1) of that subsection except that a second or subsequent conviction for *such an offense* constitutes a crime of the fourth degree." *Ibid.* (emphasis added).

In 1989, under an earlier version of the prostitution statute, defendant, without counsel, pled guilty to the petty disorderly persons offense of "[s]olicit[ing] another person in or within view of any public place for the purpose of being hired to engage in sexual activity." *L.* 1978, *c.* 95, § 2C:34–1.[3] For that offense, she was assessed fines and costs in the amount of $130.

Defendant and the State both have plausible interpretive claims on *N.J.S.A.* 2C:34–1(c)(4). Defendant argues that given the structure of the statute, "such an offense" refers only to prior disorderly persons offenses and therefore excludes her 1989 conviction for' a *petty* disorderly persons offense. She contends that because the statute defines "offense" as a disorderly persons offense, the phrase "such an offense" can only mean a prior disorderly persons offense. *See N.J.S.A.* 2C:34–1(c)(4).

---

[3] The Legislature amended the prostitution statute in 1991, 1997, 1999, and 2005. *L.* 1991, *c.* 211, § 1; *L.* 1997, *c.* 93, § 1; *L.* 1999, *c.* 9, § 1; *L.* 2005, *c.* 77, § 2. The 2005 amendment, which went into effect after defendant's 2004 indictment, alters provisions of the statute that are not germane to this appeal.

■ Defendant's most persuasive argument follows from the doctrine of the last antecedent, a principle of statutory construction that holds that, unless a contrary intention otherwise appears, a qualifying phrase within a statute refers to the last antecedent phrase. *See* 2A *Sutherland Statutory Construction* § 47.33, at 487–88 (7th ed. 2007) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."); *see also State ex rel. S.Z.,* 177 *N.J.Super.* 32, 35, 424 *A.*2d 855 (App.Div.1981) (applying last antecedent doctrine to interpret criminal statute); *State v. Congdon,* 76 *N.J.Super.* 493, 502, 185 *A.*2d 21 (App.Div.1962) (same). Applying that interpretive doctrine to *N.J.S.A.* 2C:34–1(c)(4), the qualifying phrase, "second or subsequent conviction for *such an offense,*" refers to the last antecedent phrase, "[a]n offense under subsection b.[1] [engaging in prostitution] constitutes a *disorderly persons offense." Ibid.* (emphasis added). By defendant's reckoning, only a prior conviction for a disorderly persons offense under the prostitution statute qualifies for the upgraded fourth-degree charge.

Additionally, defendant submits that the petty disorderly persons offense to which she pled guilty in 1989 is a different offense from the one charged in the current indictment. Defendant pled guilty under an earlier version of the prostitution statute that made it a petty disorderly persons offense to "[s]olicit[ ] another person in or within view of any public place for the purpose of being hired to engage in sexual activity," *L.* 1978, *c.* 95, § 2C:34–1, whereas the law under which she is charged today proscribes "engag[ing] in prostitution," *N.J.S.A.* 2C:34–1(b)(1). The current statute defines "prostitution" as "sexual activity with another person in exchange for something of economic value, or the offer or acceptance of an offer to engage in sexual activity in exchange for something of economic value." *N.J.S.A.* 2C:34–1(a)(1). Based on the textual differences between the predecessor and current statutes, defendant concludes that the prior and present offenses are not the same.

Moreover, defendant submits that in 1997, the Legislature removed from the text of *N.J.S.A.* 2C:34–1 the requirement that the offense of prostitution occur in a "public place" and placed that element in a newly created statute, *N.J.S.A.* 2C:34–1.1(b), which makes it a disorderly persons offense for a person to "wander[ ], remain[ ] or prowl[ ] *in a public place* with the purpose of engaging in prostitution or promoting prostitution as defined in *N.J.S.[A.]* 2C:34–1; and ... engage[ ] in conduct that, under the circumstances manifests [either of those purposes]." *N.J.S.A.* 2C:34–1.1(b) (emphasis added). A conviction under *N.J.S.A.* 2C:34–1.1(b) is *not* a predicate offense for an enhanced charge under *N.J.S.A.* 2C:34–1(c)(4). Defendant essentially maintains that her prior conviction for soliciting in a public place is similar to the current *N.J.S.A.* 2C:34–1.1(b), which proscribes wandering in a public place to promote or engage in prostitution.

The State counters that a petty disorderly persons offense under the superseded prostitution statute, *L.* 1978, *c.* 95, § 2C:34–1, is the "functional equivalent" of a disorderly persons offense under the current law, *N.J.S.A.* 2C:34–1(b)(1). The State claims that because the prior and current versions of the statute "contain nearly identical elements and address the same evil," defendant's 1989 solicitation offense falls within the ambit of "engag[ing] in prostitution," as presently proscribed by *N.J.S.A.* 2C:34–1(b)(1). Therefore, as a previous offender, defendant was properly charged with a fourth-degree crime.

A 1991 amendment to the prostitution statute, the State contends, was merely intended to upgrade to disorderly persons offenses those offenses previously designated as petty disorderly. *See L.* 1991, *c.* 211, § 1. The 1999 amendment increased the degree of the offense from disorderly persons to fourth-degree for a prior offender. *See L.* 1999, *c.* 9, § 1. From the State's perspective, construing the statute as defendant suggests would allow a person convicted of a prostitution offense before the 1991 amendment to "wipe the slate clean" for enhanced charging purposes, giving an undeserved windfall to repeat offenders.

The State turns to the legislative history of the 1999 amendment to *N.J.S.A.* 2C:34–1(c)(4) to buttress its textual and policy-based interpretation. The State points to similar statements issued by the Assembly and Senate Judiciary Committees, which accompanied the amended legislation. The Senate committee statement indicated that "a second or subsequent conviction for the offense of engaging in prostitution would be graded as a crime of the fourth degree." S. Judiciary Comm., *Statement to A–1689 and A–1837* (Sept. 24, 1998); *accord* Assemb. Judiciary Comm., *Statement to A–1689 and A–1837* (June 4, 1998). Based on the committee statements, the State discerns no distinction between the predecessor statute's denomination of a prostitution offense as petty disorderly and the current statute's denomination of the offense as disorderly.

### III.

As mentioned earlier, defendant and the State have offered competing plausible interpretations of the statute based on textual analysis. We find the legislative history of the statutory amendments to be unenlightening in resolving the textual ambiguity. Although it is clear that the Legislature generally intended to subject repeat offenders to enhanced penalties, it is uncertain that it intended to include prior petty disorderly persons offenders in that category. The Legislature did not give an unmistakable signal that it intended in the 1999 amendment to allow a prior petty disorderly persons offender to be subjected to an enhanced second charge with a sentencing range eighteen times greater than the first one. (A petty disorderly persons offense is punishable by a maximum of thirty days imprisonment, *N.J.S.A.* 2C:43–8, whereas a fourth-degree crime is punishable by a maximum of eighteen months of imprisonment, *N.J.S.A.* 2C:43–6(a)(4)). Whether the Legislature intended defendant to be treated as a first offender or second offender is mired in ambiguity.

When the Legislature intends to include within a statute's sweep offenses under a predecessor statute for sentencing en-

hancement purposes, it knows how to draft language to accomplish that objective. For example, *N.J.S.A.* 2C:14–6 provides for enhanced sentences for second or subsequent convictions for sexual assault, *N.J.S.A.* 2C:14–2, and aggravated criminal sexual contact, *N.J.S.A.* 2C:14–3(a). That enactment provides:

> For the purpose of this section an offense is considered a second or subsequent offense, if the actor has *at any time been convicted under sections 2C:14–2 or 2C:14–3a. or under any similar statute of the United States, this state, or any other state for an offense that is substantially equivalent to sections 2C:14–2 or 2C:14–3a.*
>
> [*N.J.S.A.* 2C:14–6 (emphasis added).]

The absence of similar language in *N.J.S.A.* 2C:34–1 underscores the irresolvable ambiguity that inheres in that statute. In dismissing the present indictment, the trial court explained that if the Legislature had written *N.J.S.A.* 2C:34–1(c)(4) to read that an upgraded charge would follow for a "second or subsequent conviction *for any offense relating to prostitution,*" its intention would have been unequivocal. (Emphasis added). In the end, we are left with the words that actually appear in the statute. We cannot rewrite a criminal statute to increase sentencing penalties that do not appear clearly on the face of that statute.

Our dissenting colleague has given a reasonable interpretation of the statute, one similar to that presented by the State. We find, however, that there is more than one reasonable interpretation of the statute. It is the clash of those reasonable interpretations that produces the ambiguity that we now resolve in favor of defendant.

## IV.

Because the statutory language and legislative history do not resolve the ambiguity in *N.J.S.A.* 2C:34–1(c)(4), that ambiguity must be resolved in favor of defendant under the doctrine of lenity. We hold that pursuant to *N.J.S.A.* 2C:34–1(c)(4), defendant's 1989 petty disorderly persons conviction for soliciting is not a prior offense that elevates the current charge of engaging in prostitution from a disorderly persons offense to a fourth-degree

crime. Accordingly, we reverse the Appellate Division, reinstate the trial court's dismissal of the indictment, and remand for proceedings consistent with this opinion.[4]

Justice RIVERA–SOTO, dissenting.

Certification was granted in this case to determine two distinct issues: "(1) whether a conviction under former *N.J.S.A.* 2C:34–1(a)(2) constitutes 'such an offense' for purposes of enhanced grading under *N.J.S.A.* 2C:34–1(c)(4); and (2) whether a prior uncounseled conviction of a petty disorderly persons offense can be used to elevate a disorderly persons offense to an indictable offense under a conversion-of-charge statute." *State v. Gelman,* 192 *N.J.* 474, 932 *A.*2d 26 (2007).

According to the majority, the issue on appeal is "whether that petty disorderly persons conviction was a legally cognizable predicate offense under the current statute, thus justifying the upgraded charge of fourth-degree prostitution." *Ante* at 478, 950 *A.*2d at 881. The majority concludes that "the current *N.J.S.A.* 2C:34–1— even after consideration of its legislative history—is insolubly ambiguous concerning whether a defendant can be charged with the fourth-degree crime of prostitution based on a prior petty disorderly persons conviction under the predecessor statute." *Ibid.* Given that conclusion, the majority is "compelled to apply the doctrine of lenity and dismiss the indictment." *Ibid.*

Stated more directly, the majority reasons as follows. In 1989, defendant was convicted of prostitution as a petty disorderly persons offense under former *N.J.S.A.* 2C:34–1(a)(2). That statute was amended in 1991 to "[r]evise[ ] the law governing prostitution and upgrade[ ] offenses involving prostitution in certain cases." *L.* 1991, *c.* 211 (codified at *N.J.S.A.* 2C:34–1). Those revisions were designed to "ratchet-up" the penalties for prostitu-

---

4 Our disposition of this appeal does not bar the State from prosecuting defendant on the disorderly persons charge of engaging in prostitution based on the initial complaint filed against her.

tion and are relevant to this case in two distinct respects. First, the penalty for prostitution was raised from a petty disorderly persons offense to a disorderly persons offense. *Compare* former *N.J.S.A.* 2C:34–1(a)(1) ("[a] person is guilty of prostitution, a petty disorderly persons offense, if he or she ... engages in sexual activity as a business"), *with* current *N.J.S.A.* 2C:34–1(b)(1) and (c)(4) ("[a] person commits [a disorderly persons offense] if ... [t]he actor engages in prostitution"[1]). Second, the 1991 amendments sought to provide enhanced penalties for those who repeatedly engage in prostitution, *see* current *N.J.S.A.* 2C:34–1(c)(4) (providing that first-offense engaging in prostitution is a disorderly persons offense, but that "second or subsequent conviction for such an offense constitutes a crime of the fourth degree"), whereas enhanced penalties for engaging in prostitution were not available under the former law. *See* former *N.J.S.A.* 2C:34–1(c) (allowing enhanced penalties only for promoting prostitution under subsection 1(b), but not for engaging in prostitution under subsection 1(a)).

The distinction between the former and current versions of the prostitution statute is relevant. If a prior prostitution petty disorderly persons offense conviction does constitute "such an offense" under the 1991 amendments, then a second or subsequent prostitution conviction is punishable as a fourth-degree crime; if not, then a defendant starts with a clean slate and the subsequent prostitution conviction is punishable only as a first offense, that is, a disorderly persons offense.

In the majority's view, that difference is the result of a "textual ambiguity[,]" *ante* at 486, 950 *A.*2d at 885, constitutes an "irresolvable ambiguity[,]" *id.* at 487, 950 *A.*2d at 886, simply "is insolubly ambiguous[,]" *id.* at 478, 950 *A.*2d at 881, and "is mired in ambiguity." *Id.* at 486, 950 *A.*2d at 886. Based on that conclu-

---

[1] Current *N.J.S.A.* 2C:34–1(a)(1) defines "prostitution" as "sexual activity with another person in exchange for something of economic value, or the offer or acceptance of an offer to engage in sexual activity in exchange for something of economic value."

sion, it is the majority's view that the "ambiguity must be resolved in favor of defendant under the doctrine of lenity." *Id.* at 487, 950 A.2d at 886.

I respectfully dissent. The "irresolvable and insoluble ambiguity" on which the majority relies is entirely illusory and utterly laid bare by the explicit definitional provisions of the *New Jersey Code of Criminal Justice.* At the core of the majority's analysis is its conclusion that the phrase "such an offense" as used in *N.J.S.A.* 2C:34–1(c)(4) is ambiguous. That conclusion is, in a word, wrong. We are commanded that,

> [i]n the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.
>
> [*N.J.S.A.* 1:1–1.]

*Accord Soto v. Scaringelli,* 189 *N.J.* 558, 569–70, 917 A.2d 734 (2007) (describing process of statutory interpretation). We have explained that "[s]tatutory language is to be construed with the context of the whole statute, its purposes, and the circumstances under which the words were employed, and to be given the generally accepted meaning unless the contrary intent is clear." *Grogan v. De Sapio,* 11 *N.J.* 308, 323, 94 A.2d 316 (1953). We engage in that task thusly:

> "[w]hen interpreting a statute, our overarching duty is to construe and apply the statute as enacted. We do so by applying the following principles. First, a court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation. That said, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. We have explained that we may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. We are guided by first principles: our analysis begins with the plain language of the statute."

[*In re Liquidation of Integrity Ins. Co.,* 193 *N.J.* 86, 94, 935 *A.*2d 1184 (2007) (quoting *Daidone v. Buterick Bulkheading,* 191 *N.J.* 557, 565–66, 924 *A.*2d 1193 (2007) (citations, internal quotation marks and editing marks omitted)).]

Our obligation, therefore, is clear: "to construe and apply the statute *as enacted." Ibid.* (emphasis supplied). If that is our obligation, then our task here is simple. It is inescapable that the Legislature in fact has defined what it means by the term "offense[,]" a fact notably absent from the majority's reasoning or analysis. *N.J.S.A.* 2C:1–14(k) makes patent that "[i]n this code, unless a different meaning plainly is required ... *'offense' means* a crime, a disorderly persons offense or *a petty disorderly persons offense* unless a particular section in this code is intended to apply to less than all three[.]" (Emphasis supplied). Thus, one is led to ask: if the Legislature has defined an "offense" to include crimes, disorderly persons offenses *and* petty disorderly persons offenses, where, pray tell, is the "textual ambiguity" the majority finds so "irresolvable" or "insoluble"?

When the Code of Criminal Justice is read as a whole—as it must—the plain meaning of current *N.J.S.A.* 2C:34–1(c)(4) brooks no ambiguity. It states, clearly and unequivocally, that "[a]n offense [for engaging in prostitution] constitutes a disorderly persons offense ... except that a second or subsequent conviction for [engaging in prostitution *either* as a crime, *or* a disorderly persons offense, *or* a petty disorderly persons offense] constitutes a crime of the fourth degree." There is no doubt that defendant had a prior conviction for prostitution as a petty disorderly persons offense. Thus, on its face, she is subject to the enhanced penalty provisions of *N.J.S.A.* 2C:34–1(c)(4), and the indictment so charging should be sustained. As the Appellate Division common-sensically noted, "[h]ere ... we discern no ambiguity. The act charged in 2004 is the same act charged in 1989. Defendant was convicted of offering to engage in sexual activity in exchange for money in 1989, and is, therefore, exposed to the enhanced grading for the current offense." Therefore, the judgment of the Appellate Division reversing the trial court's order dismissing the

indictment based on a manufactured and non-existent "ambiguity" should be affirmed.[2]

I respectfully dissent.[3]

*For reversal/reinstatement/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For affirmance*—Justice RIVERA–SOTO—1.

---

[2] According to the majority, this dissent presents "a reasonable interpretation of the statute, [but] there is more than one reasonable interpretation of the statute." *Ante* at 487, 950 *A.2d* at 886. That conclusion can be reached only by ignoring the overriding definitional provisions of the *Code*. It is then, and only then, that ambiguities—both real and imagined—may abound.

Definitional sections, however, exist for a specific reason: to remove or avoid possible ambiguities. If definitions are not to be applied, what is the need for them? Ignoring clearly set forth definitions contravenes established canons of statutory construction and denies the deference rightly due a co-equal branch of government.

[3] Because the majority does not address the second issue certified, *ante* at 481, 950 *A.2d* at 883—that is, "whether a prior uncounseled conviction of a petty disorderly persons offense can be used to elevate a disorderly persons offense to an indictable offense under a conversion-of-charge statute"—I too express no detailed opinion on its outcome. *But see State v. Hrycak*, 184 *N.J.* 351, 362–63, 877 *A.2d* 1209 (2005) (holding that " 'in the case of repeat DWI convictions based on uncounseled prior convictions, the actual period of incarceration imposed may not exceed that for any counseled DWI convictions' " and that "defendant has the burden of proving . . . that he or she did not receive notice of the right to counsel in the prior case" (quoting *State v. Laurick*, 120 *N.J.* 1, 16, 575 *A.2d* 1340, *cert. denied*, 498 *U.S.* 967, 111 *S.Ct.* 429, 112 *L.Ed.2d* 413 (1990))). A reading of the statute as advanced in this dissent also would require that such question be addressed. However, because, under *Hrycak* and *Laurick*, defendant bears the burden of negating the basis for penalty enhancement, the indictment should be reinstated and defendant put to her proofs, either on a motion to dismiss or at trial.