NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0653-14T2

```
APPROVED FOR PUBLICATION

    March 4, 2015

  APPELLATE DIVISION
```

IN THE MATTER OF DECEMBER 9, 2014
SPECIAL SCHOOL ELECTION.

_____

Argued February 11, 2015 - Decided March 4, 2015

Before Judges Waugh, Maven, and Carroll.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, L-463-14.

Brett E.J. Gorman argued the cause for appellant Board of Education of the Lower Cape May Regional School District, Cape May County (Parker McCay P.A., attorneys; Mr. Gorman, on the brief).

James B. Arsenault, Jr., Acting County Counsel, argued the cause for respondent County of Cape May.

Francis J. Campbell argued the cause for respondent Township of Lower (Campbell & Pruchnik LLC, attorneys; Mr. Campbell, on the brief).

Frank L. Corrado argued the cause for respondent Borough of West Cape May (Barry, Corrado & Grassi, P.C., attorneys, join in the brief of respondent Township of Lower).

Kerri A. Wright argued the cause for respondent City of Cape May (Porzio, Bromberg & Newman, attorneys; Vito A.

Gagliardi, Jr., of counsel and on the brief;
Ms. Wright and Okechi C. Ogbuokiri, on the
brief).

The opinion of the court was delivered by

CARROLL, J.A.D.

In this case of first impression, we are called upon to determine which entity must bear the cost of a special school election held pursuant to N.J.S.A. 18A:13-57 when a municipality seeks to withdraw from a limited purpose regional school district. For the reasons that follow, we conclude that such cost must be borne by the school district and not the municipality that initiates the withdrawal request.

## I.

The Lower Cape May School District (the District) is a limited purpose school district educating students in grades seven through twelve who reside in the Borough of West Cape May (West Cape May), the City of Cape May (Cape May), and the Township of Lower (Lower). On April 2, 2014, Cape May filed a petition seeking authorization from the Commissioner of Education to conduct a referendum to consider Cape May's request to withdraw from the District. On April 9, Lower filed an answer in which it did not oppose the requested referendum. On April 15, the District filed an answer in which it noted the negative impact Cape May's withdrawal would have, but ultimately

A-0653-14T2

agreed that the matter should be submitted to the voters in the school district. West Cape May did not file an answer to the petition.

On July 18, the New Jersey Department of Education's State Board of Review held a public hearing and verbally approved Cape May's petition. On October 22, the Board issued a written decision, noting that "the legal voters of Cape May and the constituent districts will have the opportunity, at a special school election, to vote on whether Cape May shall be permitted to withdraw from the limited purpose regional school district."

Meanwhile, on July 24, Rita Fulginiti, the Cape May County Clerk, sent a letter to Cape May requesting payment for the cost of the special school election. On July 31, Cape May responded that the District was responsible for the cost, citing New Jersey's statutory scheme and past precedent.

On August 29, the Cape May Executive County Superintendent, following consultation with the constituent districts, scheduled the special school election for December 9. However, Cape May and the District remained unable to agree on who would be responsible for the cost of the special election. Consequently, on September 19, the County of Cape May (the County) filed a declaratory judgment action, requesting that the court determine the issue.

The parties appeared for oral argument on September 25. The following day the judge issued a comprehensive written opinion, concluding that the District should bear the cost of the special election and directing it to make payment to the County.

## II.

On appeal, the parties reiterate the arguments they advanced before the trial court. The District, Lower, and West Cape May all contend that because the special election was initiated by Cape May's petition, and only Cape May stood to benefit from the election, it alone should bear the cost. They argue that "[i]n every circumstance the Legislature's guiding principle is that the party seeking the election is responsible for its costs." As examples, they cite N.J.S.A. 19:45-2, obligating the State of New Jersey to be financially responsible for election costs incurred on its behalf; N.J.S.A. 19:45-4, obligating counties to pay for costs for elections held on their behalf; and, with respect to municipalities, N.J.S.A. 19:45-5, which provides:

> All costs, charges and expenses incurred by the municipal clerk or any other officer or official of a municipality in carrying out the provisions of this title shall be paid by such municipality except as herein otherwise provided.

> Where any election is held in and for a municipality only, all costs, charges and expenses, including the compensation of the members of the district boards of the municipality and the compensation and expenses of the county board and the clerk thereof, for such elections, shall be paid by the municipality.

Additionally, the District argues that public policy dictates that educational funds be used for the benefit of its students, rather than to fund elections.

Cape May argues in opposition that, pursuant to N.J.S.A. 18A:13-57, a special school election is required as part of the withdrawal process, and is designed to protect the interests of all the constituent municipalities of a regional school district. Cape May contends that N.J.S.A. 19:60-12 specifically obligates a school district to pay the cost of such a special school election, as the trial court correctly determined.

### III.

An appellate court reviews a question of statutory interpretation de novo. Maeker v. Ross, 219 N.J. 565, 574-75 (2014). The primary goal of statutory analysis is to glean the Legislature's intent. State v. Rangel, 213 N.J. 500, 508 (2013); State v. Gelman, 195 N.J. 475, 482 (2008). When determining legislative intent, we begin by looking to the plain language of the statute, "giving words 'their ordinary meaning and significance.'" Rangel, supra, 213 N.J. at 509 (quoting

DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We do not view words and phrases in isolation but rather in their proper context and in relationship to other parts of a statute, so that meaning can be given to the whole of an enactment." Ibid. Furthermore, statutory analysis is conducted under the presumption that the Legislature created a logical scheme that should be interpreted to avoid contradictions. See State v. Hudson, 209 N.J. 513, 542 (2012). If a statute's plain language is not sufficient to determine legislative intent, then other extrinsic aids, such as legislative history, can be used in analysis. See Gelman, supra, 195 N.J. at 482.

N.J.S.A. 18A:13-51 to -81 articulates the process to be followed when a municipality seeks to withdraw from a limited purpose regional school district. The process is initiated when a constituent municipality, "by resolution, appl[ies] to the county superintendent of schools to make an investigation as to the advisability of [such] withdrawal." N.J.S.A. 18A:13-51. The executive county superintendent must then issue a report "discussing the educational and financial effect of the withdrawal." N.J.S.A. 18A:13-52. Prior to issuing this report, the county superintendent may require the constituent municipalities, school districts, and the regional district to

submit a feasibility study addressing the impact of the proposed withdrawal. Ibid.

Within thirty days of the filing of the county superintendent's report, the municipal governing body or the board of education of the withdrawing district may then petition the Commissioner of Education for permission to submit the issue to the voters of the withdrawing district and the remaining districts within the regional district. N.J.S.A. 18A:13-54. After the filing of any answers to the petition, the Commissioner then submits the matter to a board of review, which is similarly tasked with determining "the effect of the proposed withdrawal . . . upon the educational and financial condition of the withdrawing and the remaining districts." N.J.S.A. 18A:13-56.

If three of the four members who comprise the board of review vote to approve the application, then:

> [T]he county superintendent shall, after conferring with the boards of education of the constituent districts, fix a day and a time on said day for holding a special school election, at which time the question whether or not the withdrawing school district shall withdraw from the regional district . . . shall be submitted to the legal voters of the withdrawing district and to the legal voters within the remainder of the regional district . . . .
>
> [N.J.S.A. 18A:13-57 (emphasis added).]

While the statute is silent as to who bears the expense of the special school election, we determine that resolution of the cost issue is governed by N.J.S.A. 19:60-12 (emphasis added), which provides in relevant part that:

> All costs, charges and expenses, including the compensation of the members of the district boards and the compensation and expenses of the county board of elections, the county superintendent of elections, the clerk of the county, and the municipal clerks for any school election held at a time other than the time of the general election shall be paid by the board of education of the school district.

"'School election' means any annual or special election to be held in and for a local or regional school district established pursuant to chapter 8 or chapter 13 of Title 18A of the New Jersey Statutes." N.J.S.A. 19:1-1 (emphasis added). A "special election" is further defined as "an election which is not provided for by law to be held at stated intervals." Ibid.

In the present case, the election is not one provided for by law to be held at stated intervals. Rather, it is a special school election held at a time other than the time of the general election, thus bringing it within the ambit of N.J.S.A. 19:60-12. Accordingly, when read together, N.J.S.A. 19:60-12, N.J.S.A. 19:1-1, and N.J.S.A. 18A:13-57 clearly obligate the District to bear the cost of the special election to determine Cape May's right to withdraw from the District.

Even though resort to legislative history is unnecessary, we nonetheless find it enlightening. The statutory procedure for withdrawal from a limited purpose regional school district, including N.J.S.A. 18A:13-57, became effective in 1976. L. 1975, c. 360. Although the statutory framework was subsequently amended to also provide a mechanism for dissolution, L. 1993, c. 255, §§ 1-6, the term "special school election" has appeared in N.J.S.A. 18A:13-57 since 1976.

N.J.S.A. 19:60-12 was later enacted in 1995. L. 1995, c. 278, § 12. As enacted, the provision read:

> All costs, charges and expenses, including the compensation of the members of the district boards and the compensation and expenses of the county board of elections, the county superintendent of elections and the clerk [] of the county for any school election shall be paid by the board of education of the school district. All costs, charges and expenses submitted to the board of education for payment shall be itemized and shall include the separate identification of costs to prepare, print and distribute sample ballots.
>
> [L. 1995, c. 278, § 12 (emphasis added).]

In the next section, the bill added the definition for "school election," in the same form as currently contained in N.J.S.A. 19:1-1. L. 1995, c. 278, § 13. The stated purpose of these enactments was to

> transfer[] the jurisdiction of conducting school board elections from the local boards

A-0653-14T2

of education to the county boards of election. The bill requires school districts to continue to pay the costs of conducting district elections, which includes compensating poll workers and reimbursing the county board and county clerk for expenses incurred to conduct such elections.

[Legislative Fiscal Estimate to A. 1705 (July 20, 1995).]

Based on the order in which these statutes were enacted, it is presumed that the Legislature was aware of the existence of a special election for withdrawal under N.J.S.A. 18A:13-57 when it enacted N.J.S.A. 19:60-12 and amended N.J.S.A. 19:1-1. "'The Legislature is presumed to be familiar with its own enactments . . . .'" In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (quoting State v. Federanko, 26 N.J. 119, 129 (1958)). A review of this legislative history strengthens our conclusion that the District is required to pay the cost of the election to determine Cape May's proposed withdrawal from the regional school district.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                          A-0653-14T2