NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2973-15T3

DARREN M. NANCE,

 Petitioner-Appellant,

v.

STATE OF NEW JERSEY, DEPARTMENT
OF TREASURY, DIVISION OF PENSION
AND BENEFITS,

 Respondent-Respondent.
_______________________________

 Submitted May 25, 2017 – Decided June 30, 2017

 Before Judges O'Connor and Mawla.

 On appeal from the Board of Trustees, Police
 and Firemen's Retirement System, PFRS No.
 56220.

 Darren M. Nance, appellant pro se.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa H. Raksa,
 Assistant Attorney General, of counsel;
 Danielle P. Schimmel, Deputy Attorney General,
 on the brief).

PER CURIAM

 Appellant Darren Nance appeals from a February 8, 2016

administrative determination by the Board of Trustees, Police and
Firemen's Retirement System (the Board) denying his request to

waive interest payments on loans he took against his pension.

Because we find no merit in appellant's arguments, we affirm the

Board's determination.

 The following facts are taken from the record. Appellant was

employed as a police officer, first with Essex County and then

with the City of Newark, and enrolled in the Police and Firemen's

Retirement System (PFRS) on February 1, 1986. Appellant took nine

PFRS loans over the course of his career, which totaled $12,991.32

as of September 3, 1996, the date he was terminated from

employment. Appellant has made no payments on the loans since the

date of his termination.

 On December 18, 1997, appellant filed suit contesting his

termination, asserting violations of the Federal Civil Rights Act,

42 U.S.C.A. § 1983, and the New Jersey Law Against Discrimination,

N.J.S.A. 10:5-1 to -49. On June 24, 2010, a federal jury found

in favor of appellant, awarding him $350,000 in compensatory and

$250,000 in punitive damages. Appellant was not reinstated as a

police officer and subsequent appeals from the determination to

not reinstate him were denied by the Civil Service Commission.

Notwithstanding, appellant reached a settlement with the City of

Newark, resulting in the dismissal of all disciplinary charges,

restitution of back pay, and an official designation his employment

 2 A-2973-15T3
concluded by his resignation rather than termination. All

litigation with the City of Newark concluded as of February 4,

2015.

 On July 17, 2015, appellant applied to the Division of Pension

and Benefits for deferred retirement benefits, which notified him

of his outstanding loan balance and the interest accrued thereon.

Appellant made no loan payments and, instead, applied for a waiver

of the accrued interest on the loans; that application was denied

by the Division. Appellant appealed from the Division's

determination, but the Board upheld the denial of the waiver.

 Appellant now challenges the February 8, 2016 Board

determination. The Board concluded he was not eligible for a

waiver of the interest on the loans because N.J.S.A. 43:16A-16.1,

16.2 and N.J.A.C. 17:4-4.4, which govern the terms of PFRS loans,

mandate the accrual of four percent per annum interest on unpaid

loan balances, and require the satisfaction of loan balances

together with interest upon retirement. The Board found appellant

agreed to pay the interest, and each loan application he completed

contained a notice interest would accrue on the loans. The Board

further found a waiver inappropriate because appellant received

the $600,000 jury award and $18,438.46 in back pay from the

settlement of the disciplinary charges. The Board also noted

appellant enjoyed use of the borrowed funds.

 3 A-2973-15T3
 On appeal, appellant asserts the Board misapplied the law,

maintaining N.J.S.A. 43:16A-16.1, 16.2 and N.J.A.C. 17:4-4.4 do

not "prohibit" the Board from granting an employee a waiver of

accrued interest if the employee proved the City of Newark violated

his civil rights. Appellant also argues the lack of minority

representation on the Board "negatively impacted" the outcome.

Lastly, appellant asserts the Board's determination was arbitrary

and capricious because the Board denied him a hearing, and treated

him disparately from another PFRS member appearing before it on

the same day as appellant.

 Our review of agency determinations is limited. In re

Stallworth, 208 N.J. 182, 194 (2011). We generally "defer to the

specialized or technical expertise of the agency charged with

administration of a regulatory system." In re Virtua-W. Jersey

Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

We will "not disturb an administrative agency's determinations or

findings unless there is a clear showing that (1) the agency did

not follow the law; (2) the decision was arbitrary, capricious,

or unreasonable; or (3) the decision was not supported by

substantial evidence." Ibid. "The burden of demonstrating that

the agency's action was arbitrary, capricious or unreasonable

rests upon the [party] challenging the administrative action." In

 4 A-2973-15T3
re Arenas, 385 N.J. Super. 440, 443-44 (App. Div.), certif. denied,

188 N.J. 219 (2006).

 We first address appellant's claim the Board erred by relying

on N.J.S.A. 43:16A-16.1, 16.2 and N.J.A.C. 17:4-4.4 when it denied

his request to waive the accrued interest on his PFRS loans.

Appellant asserts these statutes and the regulation do not apply

to him because he applied to "freeze" his PFRS account, when his

civil rights lawsuit commenced. Appellant asserts he received no

response to his request to freeze this account until he submitted

his retirement application in 2015. He asserts he "reasonably

believed that the PFRS Board had acted upon his request to

deactivate his PFRS account." Thus, appellant argues:

 [t]here is no known case law that the PFRS
 could cite which would prohibit the Board of
 Trustees from granting a waiver on outstanding
 loan interest, particularly where, as in the
 instant matter, the appellant had been the
 proven victim of both Federal and State law
 violations by a law enforcement agency.

 Appellant's claim requires we examine both the statutory and

the regulatory provisions challenged to determine whether the

Board arbitrarily, capriciously or unreasonably applied them. "We

interpret a regulation in the same manner we would interpret a

statute." US BANK, N.A. v. Hough, 210 N.J. 187, 199 (2012). Our

analysis begins with the plain language of the regulation in

question. State v. Gelman, 195 N.J. 475, 482 (2008) (citing

 5 A-2973-15T3
DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "The Legislature's

intent is the paramount goal when interpreting a statute and,

generally, the best indicator of that intent is the statutory

language." DiProspero, supra, 183 N.J. at 492. To determine the

intent, we give the words of the regulation their "ordinary and

common significance." Lane v. Holderman, 23 N.J. 304, 313 (1957).

"Only if the statutory language is susceptible to 'more than one

plausible interpretation' do we turn to such extrinsic aids as

legislative history for help in deciphering what the Legislature

intended." Gelman, supra, 195 N.J. at 482 (quoting DiProspero,

supra, 183 N.J. at 492-93).

 N.J.S.A. 43:16A-16.1 states:

 Any member who has at least [three] years of
 service to his credit for which he has
 contributed as a member may borrow from the
 retirement system, an amount equal to not more
 than [fifty percent] of the amount of his
 aggregate contributions, but not less than
 [fifty dollars]; provided that the amount so
 borrowed, together with interest thereon, can
 be repaid by additional deductions from
 salary, not in excess of [twenty-five percent]
 of the member’s salary, made at the time the
 salary is paid to the member. The amount so
 borrowed, together with interest on any unpaid
 balance thereof, shall be repaid to the
 retirement system in equal installments by
 deductions from the salary of the member at
 the time the salary is paid or in such lump
 sum amount to repay the balance of the loan
 but such installments shall be at least equal
 to the member's rate of contribution to the
 retirement system and at least sufficient to

 6 A-2973-15T3
 repay the amount borrowed with interest
 thereon. Not more than two loans may be
 granted to any member in any calendar year.
 Notwithstanding any other law affecting the
 salary or compensation of any person or
 persons to whom this act applies or shall
 apply, the additional deductions required to
 repay the loan shall be made.

 The rate of interest for a loan requested by
 a member prior to the effective date of
 [N.J.S.A. 43:16A-16.1 and 16.2 and N.J.A.C.
 17:4-4.4] shall be [four percent] per annum
 on any unpaid balance thereof. . . .

 Loans shall be made to a member from his
 aggregate contributions. The interest earned
 on such loans shall be treated in the same
 manner as interest earned from investments of
 the retirement system.

N.J.S.A. 43:16A-16.2 provides:

 In the case of any member who retires without
 repaying the full amount so borrowed, the
 Division of Pensions and Benefits shall deduct
 from the retirement benefit payments the same
 monthly amount which was deducted from the
 compensation of the member immediately
 preceding retirement until the balance of the
 amount borrowed together with the interest is
 repaid. In the case of a pensioner who dies
 before the outstanding balance of the loan and
 interest thereon has been recovered, the
 remaining balance shall be repaid from the
 proceeds of any other benefits payable on the
 account of the pensioner either in the form
 of monthly payments due to his beneficiaries
 or in the form of lump sum payments payable
 for pension or group life insurance.

The applicable regulation, N.J.A.C. 17:4-4.4 also provides:

 Interest will be calculated on a periodic
 basis on the unpaid loan balance. If

 7 A-2973-15T3
 scheduled payments are not paid timely,
 interest will be accrued and added to the
 remaining outstanding loan balance. If, at
 the end of the loan schedule, there is a
 balance of less than [fifty dollars], it will
 be written off. If the balance is equal to
 or greater than [fifty dollars], the member
 will be assessed.

 Following consideration of appellant's argument in light of

the statutory language, we are not persuaded. Clearly, there is

no exception to the mandated accrual and payment of interest on

unpaid loans, other than for balances less than fifty dollars.

The plain language of the statutes and regulation supports the

Board's determination; appellant has failed to show the Board

determination was arbitrary, capricious, or unreasonable.

 Likewise, it was not arbitrary, capricious, or unreasonable

for the Board to deny appellant's request for a waiver based on

the commencement of his civil rights suit. As respondent notes,

the Board was not a party to his suit and the claims therein have

no bearing on his separate obligation to the PFRS to repay the

loans, including any accrued interest.

 Although it is not entirely clear from appellant's brief, he

seemingly argues the Board was estopped from enforcing the interest

accrual because the PFRS handbook mandates loans must be paid

within five years. He also asserts an estoppel-like argument

because PFRS never declared the loans to be in default as indicated

 8 A-2973-15T3
in its handbook. However, as noted by respondent, appellant's

claim the loans were payable within five years of issuance under

N.J.A.C. 17:4-4.9 ignores the fact the regulation, adopted in

2011, does not apply to appellant, who concluded his employment

in 1996. Also, the regulation contains no language limiting PFRS's

ability to collect loans beyond five years. In fact, the opposite

is true, as unpaid loans are deemed distributions, which are

reported to the IRS and would subject appellant to further interest

and penalties. See 26 U.S.C.A. § 72(p).

 Moreover, our Supreme Court has stated the language of a

handbook does not trump statutory authority to the contrary. See

Golden v. Cty. of Union, 163 N.J. 420, 432 (2000) (holding an

employee handbook requiring a disciplinary hearing did not

supersede a prosecutor's statutory at will right to retain or

terminate assistant prosecutors serving at the former's pleasure).

Thus, appellant's claim the handbook created rights superior to

the plain language of the statutory and regulatory requirements

governing PFRS loans is misplaced.

 Lastly, appellant's claim the Board's racial makeup

influenced its determination and his suggestion the Board treated

his matter disparate from another PFRS member is unsupported by

any facts in the record before us, and thus, is without sufficient

 9 A-2973-15T3
merit to warrant discussion in a written opinion. R. 2:11-

3(e)(1)(E).

 Affirmed.

 10 A-2973-15T3