SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Henry Sanchez v. Fitness Factory Edgewater, LLC (A-93-18) (082834)**

**Argued February 3, 2020 -- Decided May 28, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

Plaintiff Henry Sanchez brings this class action seeking relief based on the Retail Installment Sales Act, N.J.S.A. 17:16C-1 to -61 (RISA). He contends that the "initiation fee" charged in defendant Fitness Factory's gym membership contract, among other provisions, violates RISA. The trial court dismissed Sanchez's complaint, finding that RISA did not apply to the contract because it was a contract for services. The Appellate Division affirmed. While acknowledging that RISA applies to some services contracts, the Appellate Division found that RISA applies only to contracts that contain a financing arrangement. The Court considers those determinations.

In March 2013, Plaintiff Henry Sanchez joined the Fitness Factory gym in Edgewater and signed the club's membership contract, which provided for two alternative payment methods. The first option was payment in full upon signing the contract. The second was referred to as the "Electronic Funds Transfer" option, which allowed the member to make monthly payments. Only those members who chose the second option were required to pay an "initiation fee" of $29.99. Sanchez opted for the funds transfer membership and paid the initiation fee. At the end of the twenty-four months, Sanchez ended his membership without issue.

Sanchez brought a class action complaint alleging that the imposition of the initiation fee violated RISA. The trial court dismissed the complaint in its entirety. The court based its decision on the determination in Mellet v. Aquasid, LLC, 452 N.J. Super. 23, 28-30 (App. Div. 2017), that RISA does not apply to services contracts. Sanchez appealed. The Appellate Division affirmed, explaining that, "to fall within RISA's purview, a contract for the sale of goods or services must involve financing." Finding that no financing arrangement was present in Fitness Factory's membership contract, the appellate court held that RISA did not apply. The Court granted Sanchez's petition for certification. 238 N.J. 497 (2019).

**HELD:** By its terms, RISA applies to services contracts. Further, in the statute as written, there is no requirement that a contract include a financing arrangement to be covered by RISA.

1

1.  The Court looks to the plain language of RISA, which defines a "Retail installment contract" as "any contract . . . between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or services . . . in two or more installments over a period of time" and specifies that the "term includes a security agreement, chattel mortgage, conditional sales contract, or other similar instrument." N.J.S.A. 17:16C-1(b).  RISA also includes its own definition of "Services," id. at (s), and defines "Retail seller" and "Retail buyer," respectively, as "a person who sells or agrees to sell goods or services under a retail installment contract . . . to a retail buyer," id. at (c), and "a person who buys or agrees to buy goods or services from a retail seller . . . pursuant to a retail installment contract," id. at (d).  (pp. 8-10)

2.  Whether any of those provisions preclude RISA's application to services contracts or require a financing charge are questions of first impression before the Court.  Perez v. Rent-A-Center, Inc., 186 N.J. 188 (2006), provides helpful guidance but does not address those specific questions.  In Mellet, the Appellate Division relied on Perez in determining that RISA does not apply to health club membership contracts.  452 N.J. Super. at 29-30.  Applying the principles of statutory construction to the relevant RISA provisions, the Court does not agree with the result reached by the Appellate Division here or in Mellet.  The language used by the Legislature reveals that RISA applies to contracts for services and does not include the requirement of a financing arrangement.  (pp. 10-12)

3.  The definition of "retail installment contract" states that it includes "an agreement to pay the retail purchase price of goods or services."  N.J.S.A. 17:16C-1(b) (emphasis added).  RISA also includes a definition of "services," id. at (s), and its definitions of both "retail seller" and "retail buyer" include sellers and buyers of services, id. at (c) to (d).  Those provisions clearly state that RISA applies to contracts for services, and the list of examples offered in the second sentence of N.J.S.A. 17:16C-1(b) does not call for a different result or limit the variety of services contracts to which RISA applies.  The purposes that undergird RISA and the principles of interpretation appropriate to its remedial aims accord with the result compelled by the statute's plain language:  RISA encompasses services contracts.  (pp. 12-14)

4.  And under the clear and unambiguous terms of the statute, a "retail installment contract" need not include a financing arrangement.  N.J.S.A. 17:16C-1(b) makes no mention of a financing requirement, even though the Legislature has shown that it knows how to require financing arrangements in other statutes.  Further, N.J.S.A. 17:16C-41 regulates time-price differentials when they occur in retail installment contracts and grants permission for a contract to include a financing arrangement.  If the Court were to read a financing requirement into the definition of a retail installment contract, N.J.S.A. 17:16C-41's grant of authority to charge a time-price differential would be rendered superfluous.  There would be no need to grant permission in one section to do what is mandatory under another.  There is no basis in the text of RISA to impose a financing

2

requirement on retail installment contracts and, again, RISA's purpose supports the result compelled by the statute's plain language.  (pp. 14-19)

5.  The Court rejects Fitness Factory's contention that the only statute to regulate gym membership contracts is the Health Club Services Act (HCSA).  Some of HCSA's provisions overlap with those of RISA.  But the distinct provisions in each act can be applied cumulatively and, thus, in harmony.  HCSA and RISA are not in conflict, expressly or impliedly, and nothing in either statute indicates that it is to be an exclusive remedy.  (pp. 19-21)

6.  The Court notes that, if its reading here does not comport with the Legislature's original intentions, the Legislature may address this issue in the future.  And the Court emphasizes that its decision is limited by the facts presented and the procedural posture of this case at the motion-to-dismiss phase.  The merits of this case are for the trial court to address on remand.  (pp. 21-22)

**REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.**

# SUPREME COURT OF NEW JERSEY

## A-93 September Term 2018

## 082834

Henry Sanchez, on behalf
of himself and others
similarly situated,

Plaintiff-Appellant,

v.

Fitness Factory Edgewater, LLC,
Fitness Factory Rockaway, LLC,
The Fitness Factory Group, LLC,
and Dennis Cieri,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| February 3, 2020 | May 28, 2020 |

Andrew R. Wolf argued the cause for appellant (The
Wolf Law Firm, attorneys; Andrew R. Wolf, David J.
DiSabato, and Lisa R. Bouckenooghe, on the briefs).

Ronald L. Israel argued the cause for respondents (Chiesa
Shahinian & Giantomasi, attorneys; Ronald L. Israel,
Daniel D. Barnes, and Brigitte M. Gladis, on the briefs).

Garen Gazaryan, Deputy Attorney General, argued the
cause for amicus curiae New Jersey Department of
Banking and Insurance (Gurbir S. Grewal, Attorney

General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel, and Garen Gazaryan, on the brief).

Esther E. Berezofsky submitted a brief on behalf of amici curiae Consumers League of New Jersey and National Association of Consumer Advocates (Motley Rice New Jersey, attorneys; Esther E. Berezofsky, of counsel and on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

This case requires the Court to consider the application of the Retail Installment Sales Act, N.J.S.A. 17:16C-1 to -61 (RISA). Plaintiff Henry Sanchez brings this class action seeking relief based on RISA. He contends that the "initiation fee" charged in defendant Fitness Factory's gym membership contract, among other provisions, violates RISA.

The trial court dismissed Sanchez's complaint, finding that RISA did not apply to the contract because it was a contract for services. The Appellate Division affirmed. While acknowledging that RISA applies to some services contracts, the Appellate Division found that RISA applies only to contracts that contain a financing arrangement. We disagree. By its terms, RISA applies to services contracts. Further, while the Department of Banking and Insurance (DOBI) urges us to find that there is a requirement that a contract include a financing arrangement to be covered by RISA, no such requirement

2

is contained in the statute as written.  We therefore reverse the judgment of the Appellate Division.

I.

A.

In March 2013, Plaintiff Henry Sanchez joined the Fitness Factory gym in Edgewater and signed the club's membership contract, entitling him to unlimited use of the Edgewater facility for twenty-four months.

The membership contract provided for two alternative payment methods. The first option was payment in full upon signing the contract.  The second was referred to as the "Electronic Funds Transfer" option, which allowed the member to make monthly payments of $39.99.  Only those members who chose the second option were required to pay an "initiation fee" of $29.99.  At the conclusion of the twenty-four-month term, the member had the option of continuing membership on a month-to-month basis or terminating membership without penalty.

Sanchez opted for the funds transfer membership and paid the initiation fee.  At the end of the twenty-four months, Sanchez ended his membership without issue.

B.

In September 2015, Sanchez brought a class action complaint on behalf of himself and all those similarly situated in Morris County against Fitness Factory Edgewater, LLC; Fitness Factory Rockaway, LLC; The Fitness Factory Group, LLC; and Dennis Cieri (collectively, Fitness Factory). He alleged that the imposition of the initiation fee violated RISA, allowing him to bring claims under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -211, and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18.[1]

Fitness Factory filed a motion to dismiss, which the trial court granted in part and denied in part. On a subsequent motion for reconsideration, the complaint was dismissed in its entirety. The court based its decision on the Appellate Division's determination in Mellet v. Aquasid, LLC, 452 N.J. Super. 23, 28-30 (App. Div. 2017), that RISA does not apply to services contracts. Sanchez appealed, and the Appellate Division affirmed.

The Appellate Division found that while RISA may "appl[y] to some pure services contracts, coverage of the membership contract would fall

---

[1] Initially, Sanchez also argued that Fitness Factory violated the Health Club Services Act, allowing him to bring a claim under the Truth-in-Consumer Contract, Warranty and Notice Act. However, after our decision in Spade v. Select Comfort Corp., 232 N.J. 504 (2018), Sanchez conceded that he was precluded from proceeding with those claims.

outside the purpose of the statute where there is no charged interest and the membership contract itself is arguably not a true installment contract." (citation omitted). The Appellate Division further explained that, "to fall within RISA's purview, a contract for the sale of goods or services must involve financing." Finding that no financing arrangement was present in Fitness Factory's membership contract, the appellate court held that RISA did not apply.

We granted Sanchez's petition for certification. 238 N.J. 497 (2019). We also granted motions by DOBI, the Consumers League of New Jersey, and the National Association of Consumer Advocates to participate as amici curiae.

## II.

### A.

Sanchez primarily argues that, by its plain language, RISA applies to the membership contract and nothing in the statute indicates that a financing arrangement is required. He explains that the contract in this case is a "retail installment contract" as defined by RISA because it is "an agreement to pay the retail purchase price of goods or services . . . in two or more installments over a period of time." In the alternative, he argues that even if a financing arrangement is required, this contract contains one. He contends that the

5

initiation fee is a financing arrangement because it is a sum of money paid only by those who choose to pay for their memberships over time.

B.

In response, Fitness Factory argues that RISA does not apply to its membership contract because its contract does not result in ownership. Fitness Factory further contends that the language and purpose of RISA indicate that, for the statute to apply to a contract, that contract must include a financing arrangement -- which the membership contract does not. Noting that the Legislature has addressed issues in health club memberships through the Health Club Services Act, N.J.S.A. 56:8-39 to -48 (HCSA), Fitness Factory argues that HCSA is the only statute that regulates gym memberships.

C.

Amicus curiae DOBI supports Sanchez's argument that, given the plain language and purpose behind the statute, RISA applies to the membership contract, but argues that a financing arrangement is required for RISA to apply. According to DOBI, "[i]nstallment contracts charging no interest pose very little risk to consumers and, thus, do not require RISA's protections." DOBI stresses, however, that the finance charge need not be expressly designated as such and contends that the initiation fee in the membership contract at issue is a financing charge by definition.

6

The consumer groups also support Sanchez's argument that RISA applies to the membership contract because RISA's plain language and underlying purpose both indicate that it covers services contracts and does not require a financing arrangement.

## III.

## A.

"[I]n the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent." Young v. Schering Corp., 141 N.J. 16, 25 (1995) (quoting Roig v. Kelsey, 135 N.J. 500, 515 (1994)). In doing so, "we need delve no deeper than the act's literal terms." State v. Gandhi, 201 N.J. 161, 180 (2010) (quoting State v. Thomas, 166 N.J. 560, 567 (2001)). Put another way, "[w]here a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning." O'Connell v. State, 171 N.J. 484, 488 (2002). We will "neither rewrite a plainly[] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." Ibid. We will "strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant." G.S. v. Dep't of Human Servs., 157 N.J. 161, 172 (1999).

7

Our first step in interpreting a statute is to look to "the actual words of the statute, giving them their ordinary and commonsense meaning." State v. Gelman, 195 N.J. 475, 482 (2008). "If the plain language leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." State v. D.A., 191 N.J. 158, 164 (2007). "Only when the meaning of a statute is not self-evident on its face -- when it is subject to varying plausible interpretations, or the strict application of the words will lead to an absurd result or one at odds with public policy or an overall statutory scheme --" is it appropriate for the Court to "turn to extrinsic sources, such as legislative history." Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 536 (2013).

B.

Here, we apply those principles to determine whether RISA encompasses services contracts or requires a finance charge.

1.

We begin by reviewing the relevant provisions of RISA, which sets forth notice requirements for retail installment contracts, N.J.S.A. 17:16C-24; requires certain financial disclosures, N.J.S.A. 17:16C-27; prohibits certain practices, N.J.S.A. 17:16C-35 to -40; and limits the interest chargeable in connection with a sale, N.J.S.A. 17:16C-41. In any contract to which RISA

8

applies, a fee that is not expressly authorized is a violation. N.J.S.A. 17:16C-50.

Importantly for purposes of this case, RISA provides the following definition of "Retail installment contract":

> [A]ny contract, other than a retail charge account or an instrument reflecting a sale pursuant thereto, entered into in this State between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or services, which are primarily for personal, family or household purposes, or any part thereof, in two or more installments over a period of time. This term includes a security agreement, chattel mortgage, conditional sales contract, or other similar instrument and any contract for the bailment or leasing of goods by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to or in excess of the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of such retail installment contract.
>
> [N.J.S.A. 17:16C-1(b).]

RISA also includes its own definition of "Services":

> "Services" means and includes work, labor and services, professional and otherwise which are primarily for personal, family or household purposes but does not include services which are subject to the "Home Repair Financing Act," and insurance premiums financing which is subject to the "Insurance Premium Finance Company Act" . . . .

9

[N.J.S.A. 17:16C-1(s).]

RISA defines "Retail seller" and "Retail buyer":

> "Retail seller" means a person who sells or agrees to sell goods or services under a retail installment contract or a retail charge account to a retail buyer, and shall include a motor vehicle installment seller.

> "Retail buyer" means a person who buys or agrees to buy goods or services from a retail seller, not for the purpose of resale, pursuant to a retail installment contract or a retail charge account.

> [N.J.S.A. 17:16C-1(c) to (d).]

2.

Whether any of those provisions preclude RISA's application to services contracts or require a financing charge are questions of first impression before this Court.

In Perez v. Rent-A-Center, Inc., we considered whether rent-to-own contracts are subject to RISA and discussed at length the history of regulating financing agreements with respect to services and goods contracts. 186 N.J. 188, 193, 202-05 (2006). We noted that, originally, only interest rates imposed on loans of money were regulated. Id. at 202. As we explained, however, criticism of that limited oversight led many states to adopt laws regulating interest on the purchase of goods. Id. at 204. New Jersey did so with the Legislature's adoption of RISA. Id. at 205.

10

Stressing the Legislature's protective intent in enacting RISA, we set forth principles to guide the application of that statute:

> In enacting RISA, the stated legislative purpose was protection of the public interest through the regulation of the charges associated with the time sale of goods. By including conditional sales, chattel mortgages, security interests, leases, and similar instruments within RISA's protective ambit, the Legislature signaled that it intended to sweep into the Act as many cognate agreements as possible, even those that did not strictly fall within a denominated category. That broad mandate, along with the well-established notion that remedial statutes like RISA should be liberally construed to achieve their salutary aims, require[s] questions regarding the applicability of the statute to be resolved in favor of consumers for whose protection RISA was enacted.
>
> [Id. at 209 (citation omitted).]

Although Perez provides helpful guidance, it does not address the specific questions now before us.

In Mellet, the Appellate Division relied on Perez in considering health club membership contracts. 452 N.J. Super. at 29-30. The Mellet court found that "[h]ealth club members are not in the category of consumers RISA is designed to protect, because these contracts do not involve the sale of goods." Id. at 30. Reasoning that "the entire premise of the installment sales contract contemplated by RISA is possession and eventual ownership of a specified

11

good by a buyer," id. at 28, the Appellate Division cited the examples of covered agreements listed in the statute and stated that it "fail[ed] to see how a health club membership agreement is similar to any of the enumerated instruments," id. at 30. The Appellate Division has followed Mellet in two unpublished decisions, including the decision here.

IV.

Applying the principles of statutory construction to the relevant RISA provisions, we cannot agree with the result reached by the Appellate Division here or in Mellet. Our analysis in this case begins and ends with RISA's plain text. The language used by the Legislature provides an answer to both of the questions we are called to consider: RISA applies to contracts for services and does not include the requirement of a financing arrangement.

A.

First, with respect to RISA's application to services contracts, the definition of "retail installment contract" states that it includes "an agreement to pay the retail purchase price of goods or services." N.J.S.A. 17:16C-1(b) (emphasis added). RISA also includes a definition of "services," N.J.S.A. 17:16C-1(s), and its definitions of both "retail seller" and "retail buyer" include sellers and buyers of services, N.J.S.A. 17:16C-1(c) (defining a retail seller in part as "a person who sells or agrees to sell goods or services"

12

(emphasis added)); N.J.S.A. 17:16C-1(d) (defining a retail buyer in part as "a person who buys or agrees to buy goods or services from a retail seller" (emphasis added)).

Those provisions clearly state that RISA applies to contracts for services, and the list of examples offered in the second sentence of N.J.S.A. 17:16C-1(b) does not call for a different result or limit the variety of services contracts to which RISA applies. That same sentence indicates that a retail installment contract "includes a security agreement, chattel mortgage, conditional sales contract, or other similar instrument." N.J.S.A. 17:16C-1(b) (emphasis added). The term "includes" reveals that the list of agreements covered by the statute is not exhaustive. See New Oxford American Dictionary 879 (3d ed. 2010) (noting that "[i]nclude has a broader meaning than comprise" and that "including or includes implies that there is more than what is listed"); see also Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577 (1994) (noting that the statute at issue used the term "including" so as "to indicate the 'illustrative and not limitative' function of the examples given" (quoting 17 U.S.C. § 101)); Black's Law Dictionary 912 (11th ed. 2019) ("The participle including typically indicates a partial list"). The illustrative rather than exhaustive list of examples does not erase the unqualified inclusion of contracts pertaining to "services" in the definitions we have examined.

13

Because RISA's plain language "leads to a clear and unambiguous result[,] our interpretive process" ends there. See D.A., 191 N.J. at 164. We nevertheless note that RISA's purpose also supports the conclusion that the membership contract is covered. In adopting RISA, "the Legislature signaled that it intended to sweep into the Act as many cognate agreements as possible, even those that did not strictly fall within a denominated category." Perez, 186 N.J. at 209. In Perez, we relied on "the well-established notion that remedial statutes like RISA should be liberally construed to achieve their salutary aims," which "require[s] questions regarding the applicability of the statute to be resolved in favor of consumers for whose protection RISA was enacted." Ibid. Thus, RISA's remedial nature also supports a broad interpretation that it extends to services contracts.

In short, the purposes that undergird RISA and the principles of interpretation appropriate to its remedial aims accord with the result compelled by the statute's plain language: RISA encompasses services contracts.

B.

That plain language also provides our answer with respect to the alleged requirement of a financing arrangement. Under the clear and unambiguous terms of the statute, a "retail installment contract" need not include a financing arrangement.

14

Once again, a "retail installment contract," as relevant here, is defined as "any contract, other than a retail charge account . . . , entered into . . . between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or services . . . in two or more installments over a period of time." N.J.S.A. 17:16C-1(b). That definition makes no mention of a financing requirement.

In other statutes, the Legislature has shown that it knows how to require financing arrangements. In N.J.S.A. 54:32B-8.57, a section of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -55, for example, the Legislature expressly exempted from the tax imposed under that Act "[r]eceipts from a sale-leaseback transaction," specifying that "[a] sale-leaseback shall be considered a financing arrangement and shall not be considered a separate sale, use, or lease of the property." In other words, the applicability of the exemption is expressly tied to the status of the agreement as a financing arrangement. Similarly, N.J.S.A. 46:10B-24(b) defines "[b]ona fide discount points," for purposes of the Home Ownership Security Act, N.J.S.A. 46:10B-22 to -35, as loan discount points that are, in part, "[p]aid for the express purpose of reducing, and which result in a reduction of, the interest rate or time-price differential applicable to the loan." An underlying financing agreement is thus the sine qua non of a bona fide discount point.

15

Here, the Legislature did not expressly condition the existence of a retail installment contract on the presence of a financing arrangement. Fitness Factory and DOBI nevertheless ask us to read such a requirement into the definition, arguing that the requirement would accord with the consumer-protective policies that RISA aims to advance.

To do so, however, would not only necessitate the "rewrit[ing] [of] a plainly[] written enactment of the Legislature," O'Connell, 171 N.J. at 488, but would also fly in the face of the permissive language the Legislature employed when discussing financing arrangements in RISA.

N.J.S.A. 17:16C-41 regulates time-price differentials when they occur in retail installment contracts. Significantly, however, it does not require such financing arrangements. On the contrary, the statute specifies that such arrangements can be made part of the agreement:

> A retail seller . . . , under the provisions of this act, shall have authority to charge, contract for, receive or collect a time price differential as defined in this act, on any retail installment contract evidencing the sale of goods or services in an amount or amounts as agreed to by the retail seller . . . and the buyer . . . .
>
> [N.J.S.A. 17:16C-41 (emphasis added).]

The statute grants permission for a contract to include a financing arrangement -- it does not mandate.

16

Were we to read a financing requirement into the definition of a retail installment contract, N.J.S.A. 17:16C-1(b), we would render N.J.S.A. 17:16C-41's grant of authority to charge a time-price differential superfluous, contrary to settled principles of statutory interpretation. See G.S., 157 N.J. at 172. There would be no need to grant permission in one section to do what is mandatory under another.

An examination of the corollary provisions that define retail charge accounts and govern the imposition of time-price differentials on such accounts illustrates the point. Within the definition of a "[r]etail charge account," the Legislature permits, but does not require financing:

> "Retail charge account" means any account, other than a retail installment contract or a home repair contract . . . established by an agreement which prescribes the terms under which a retail buyer may from time to time purchase or lease goods or services which are primarily for personal, family or household purposes, and under which the unpaid balance thereunder, whenever incurred, is payable in one or more installments and under which a time price differential may be added in each billing period as provided herein.
>
> [N.J.S.A. 17:16C-1(r) (emphasis added).]

That definition provides a clear contrast between the requirement that the balance be payable in installments and the possibility that interest be charged. N.J.S.A. 17:16C-44.1, which regulates time-price differentials when they

17

occur in retail charge accounts, echoes that permissive language: "Notwithstanding any other law to the contrary, a retail seller, sales finance company, banking institution or other holder may charge, receive and collect a time price differential in each billing period on obligations incurred pursuant to any retail charge account . . . ." N.J.S.A. 17:16C-44.1 (emphasis added).

The definitional and price-differential provisions devoted to retail charge accounts are in harmony, not in the tension Fitness Factory and DOBI invite us to introduce here between the parallel provisions applicable to retail installment contracts. We find no basis in the text of RISA to impose a financing requirement on retail installment contracts.

And again, RISA's purpose supports the result compelled by the statute's plain language. That purpose is "to protect consumers from overreaching by others, to protect consumers from overextending their own resources[,] and also to promote the availability of financing to purchase various goods and services." Perez, 186 N.J. at 205 (quoting Girard Acceptance Corp. v. Wallace, 76 N.J. 434, 439 (1978)). To accomplish those aims, RISA not only regulates financing arrangements, but also places other limits on retail installment contracts including prohibiting acceleration clauses, N.J.S.A. 17:16C-35, and other fees, N.J.S.A. 17:16C-50. Additionally, it includes provisions to make contracts more readily understandable by

18

potentially unsophisticated purchasers. See, e.g., N.J.S.A. 17:16C-27 (listing specific items that must be set forth in a retail installment contract). Those provisions support the proposition that RISA serves more than one specific goal and should not be construed so narrowly. RISA prevents not only unfair financing arrangements, but also provides broad protections for consumers.[2]

Based on the language chosen by the Legislature in RISA, we find no requirement that retail installment contracts include financing arrangements.

## C.

Last, we also reject Fitness Factory's contention that the only statute to regulate gym membership contracts is HCSA. It is a long-recognized principle of statutory interpretation that "[t]he Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose." State v. Federanko, 26 N.J. 119, 129 (1958); see also Jacobs v. State Highway Auth., 54 N.J. 393, 401 (1969) ("[W]hen cognate laws are passed, a presumption of at least equal force is present that they were intended to become part of a consistent whole unless

---

[2]  For that reason, even if all of the examples listed in the second sentence of N.J.S.A. 17:16C-1(b)'s definition of "retail installment contract" do contain financing agreements -- a proposition we do not rule on in the abstract -- the list would still not compel reading a financing requirement into services-based retail installment contracts.

19

they or parts of them are expressly or impliedly incompatible.").  Therefore, "when construction involves the interplay of two or more statutes, we seek to harmonize the two."  State in Interest of J.S., 202 N.J. 465, 480 (2010).

Some of HCSA's provisions overlap with those of RISA.  For example, both statutes require that a contract be in writing.  See N.J.S.A. 56:8-42(a) (HCSA); N.J.S.A. 17:16C-21 (RISA).  Other provisions are distinct, with HCSA including requirements specific to health clubs.  See, e.g., N.J.S.A. 56:8-44 ("A health club may not charge and accept a down payment exceeding 25% of the total contract price prior to opening the health club facility.").  But such distinct provisions do not conflict with provisions in the other legislative act; rather, the distinct provisions in each act can be applied cumulatively and, thus, in harmony.

HCSA and RISA are not in conflict, expressly or impliedly, and nothing in either statute indicates that it is to be an exclusive remedy.  Indeed, the Legislature opted to explicitly exclude from RISA's definition of "services" two areas regulated by other statutes but did not similarly exclude health club contracts from RISA's reach.  See N.J.S.A. 17:16C-1(s) ("'Services' means and includes work, labor and services, professional and otherwise which are primarily for personal, family or household purposes but does not include services which are subject to the 'Home Repair Financing Act,' and insurance

20

premiums financing which is subject to the 'Insurance Premium Finance Company Act.'" (emphasis added) (citation omitted)).  As such, we find that the Legislature intended that both statutes may apply to the same contract.

### D.

The Legislature may determine that our reading today does not comport with its original intentions.  If it so chooses, the Legislature may address this issue in the future.  For now, we are left to fulfill our role of interpreting the text before us.  We find that the plain text of RISA indicates that it applies to services contracts without financing arrangements, including Fitness Factory's membership contract.

### V.

We emphasize that our decision is limited by the facts presented to us and the procedural posture of this case at the motion-to-dismiss phase.  The merits of this case are for the trial court to address on remand.  Our holding is limited to stating that RISA applies to services contracts, and that the definition of "retail installment contract" does not require that a contract contain a financing arrangement.  Our decision is based solely on the language presented to us in RISA.  We leave the policy-based arguments made by DOBI to be considered by the Legislature, which may amend RISA if it so chooses.

21

VI.

The judgment of the Appellate Division is reversed.  We remand for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.